JOHN GLEASON v. WILLIAM H. B. OWEN.

*Trover.   Deed.   Mortgage.*

G. executed two notes, and a mortgage to secure the same, to E. & H., who transferred the notes and˙ delivered the mortgage deed to the defendant. The defendant afterwards, but before any written assignment of the mortgage had been made to him by E. & H., sold and transferred the notes to the plaintiff, and agreed to get the mortgage deed, (which was then in the hands of another person, but subject to the defendant's order at any time,) and deliver it to the plaintiff. This the defendant afterwards refused to do. *Held,* that the plaintiff could maintain trover for the mortgage deed.

*Held,* also, that trover would lie notwithstanding the defendant claimed that the transaction between him and the plaintiff was a payment, and not a purchase of the notes, and that he should cancel the mortgage deed, but would not assign it.

TROVER for the alleged wrongful conversion by the defendant of a certain mortgage deed, the property of the plaintiff. The conversion was laid on the 12th of February, 1862. Plea, not guilty, and trial by the court at the September Term, 1862, KELLOGG, J., presiding.

The mortgage deed which was the subject of the action, bore date on the 5th April, 1859, and was duly executed by Michael Gleason to Melzer Edson and G. P. Hannum, to secure the

payment of two promissory notes therein described. On the trial the notes were produced and used as evidence by the plaintiff, and the mortgage deed was produced and used as evidence by the defendant.

From evidence introduced on the trial which was not contradicted, it appeared that, on or about the 21st January, 1862, the defendant, at the suggestion of Michael Gleason, who was then indebted to him on book account to the amount of eighty dollars, purchased the said notes and mortgage deed of Edson & Hannum, with the expectation that the mortgagor would execute to him a new mortgage deed, conveying the same premises described in the mortgage deed in controversy, to secure to him the payment of his book account claim, as well as of such notes, but that such new mortgage deed was not executed by the said Michael; that on the 22nd January, 1862, the defendant commenced an action on book account in his favor against Michael Gleason, and caused the interest of said Michael in the mortgaged premises to be duly attached therein, which action had resulted in a judgment in favor of Owen against the said Michael.

It also appeared that, when the defendant purchased such mortgage notes of Edson & Hannum, the mortgage deed, by which the payment of the notes was secured, was left with· A. L. Brown, Esq., for the purpose of having an assignment of the same from Edson & Hannum to the defendant written by Brown and duly executed and acknowledged by Edson & Hannum; that the assignment, which appeared to be endorsed on the mortgage deed, was accordingly written by Brown, but was not executed or acknowledged by Edson & Hannum until the 14th February, 1862; and that the mortgage notes were transferred to the defendant at the time when he purchased the same as aforesaid, and that the mortgage deed was from that time subject to his control, so that he could have had it on any day after he bought the notes as aforesaid,—but that he did not receive the mortgage deed, or have it in his actual possession, until the day when the assignment thereon was executed and acknowledged as aforesaid, and that he then received the same with the assignment thereon duly executed and acknowledged.

It also appeared that, shortly before the 12th February, 1862,

Michael Gleason, in anticipation of proceedings on the part of the defendant to foreclose his equity of redemption in the mortgaged premises, applied to the plaintiff to assist him in arranging such mortgage debt which had been so purchased by the defendant, and that, thereupon, the plaintiff consulted his attorneys, and consented to do so by taking the notes and mortgage deeds and holding the same as security for the amount which he should furnish and pay for that purpose, and that he employed Walter C. Dunton, Esq., as counsel, and gave him the money to carry the arrangement into effect, and that the money so furnished to Dunton was the money of the plaintiff, and that no part of it was furnished by Michael Gleason; and that the interviews which Dunton had with the defendant in reference to the notes and mortgage deed, as stated in his testimony, as hereinafter mentioned, were had on the 12th February, 1862.

On the trial, Dunton was examined as a witness on the part of the plaintiff, and testified that at some time in the winter of 1861–2 the plaintiff came to him and wanted him to purchase the mortgage deed in question of the defendant, who then owned it, and then delivered to him the amount of money suppos ed to be due thereon; that he, the witness, thereupon went to the defendant and told him that he, the witness, had come to get that mortgage; that, as the witness thought, he did not tell the defendant at first whether he wanted to purchase the mortgage, or to pay it; that after some conversation, not material, the defendant finally said that "he had as lieves have the money as the mortgage," and thereupon computed the amount due upon the mortgage notes; that the witness then took from his pocket the money equal to the amount due on the mortgage notes, which had been furnished to him by the plaintiff, and laid the same upon the desk in the defendant's counting room, where this interview was held; that, at this interview and during this time, Michael Gleason was standing by the witness and the defendant, and the defendant wanted to nave him hand the money to him, the defendant, and that, as the witness thought, Michael put his hand out and shoved the money towards the defendant; that the defendant took the money and went towards his safe with it, and said he would cancel the mortgage; that the witness thereupon

told him not to do it, for the money and the mortgage belonged to the plaintiff in this suit; that after the witness told the defendant that he, the witness, wanted the mortgage, and that the defendant must not cancel it, the defendant said that he had not got the mortgage, but would get it and give it to the witness in a few days; that the witness then went out of the defendant's store and talked the matter over with the plaintiff, who was dissatisfied, and wanted the mortgage immediately; that thereupon the witness went back into the store and told the defendant how the plaintiff felt, and that the defendant must give him the mortgage or the money, and that the defendant refused to do either, and said that he would cancel the mortgage, and was anxious to have the receipt of the money by him treated as a payment, and not as a purchase of the notes and mortgage; that subsequently, and before this suit was commenced, the witness again saw the defendant and demanded the mortgage of him, and told him that he would be sued if he did not give it up; but that the defendant refused to do so, and wanted to treat the matter as a payment of the mortgage; and that, in doing all this, the witness was acting in behalf of the plaintiff, and as his attorney.

The plaintiff and Michael Gleason were also examined as witnesses on the part of the plaintiff, and their testimony tended to corroborate that of Dunton in respect to the material facts testified to by him.

The plaintiff further offered evidence on the trial to show that he advanced the money paid to the defendant, as above stated, upon the understanding and agreement between the plaintiff and Michael Gleason, that the plaintiff should hold the mortgage and notes above referred to, as security for the sum which he should advance thereon. The plaintiff did not claim that the defendant was privy to, or was advised of, this arrangement at any time before the notes were delivered by the defendant to Dunton. To the admission of this evidence the defendant objected, and it was excluded by the court; and to the decision of the court by which the said evidence, so offered, was excluded, as aforesaid, the plaintiff excepted.

It did not appear that the plaintiff ever, at any time, offered

38

to return the mortgage notes to the defendant, or that he was requested so to do.

The defeudant was examined as a witness in his own behalf, and his testimony in respect to several points was in conflict with the evidence introduced on the part of the plaintiff.

Upon the evidence and facts, above stated, the plaintiff claimed to recover nominal damages. But the court, without finding any fact, which was disputed on the trial, held and decided as matter of law, that, upon the facts found, and the evidence introduced on the part of the plaintiff, as above stated,—assuming that the facts were as claimed by the plaintiff, in respect to all points as to which the evidence of the parties was in conflict, and as the testimony on the part of the plaintiff tended to show,— the plaintiff was not entitled to recover at law ; and rendered judgment in favor of the defendant. To this decision and judg- ment the plaintiff also excepted.

.J. Prout, for the plaintiffs.

W. H. Smith, for the defendant.

POLAND, CH. J. The county court held that if all the facts were found which the plaintiff's evidence tended to prove, they did not entitle him to sustain his ‚action of trover for the mort- gage deed.

It was conceded that the defendant had become the owner of the two notes given by Michael Gleason to Edson & Hannum, and the mortgage deed executed as a secui ity for their payment, that the notes had been delivered to him, and the mortgage deed had been handed over to Brown to write an assignment upon it, and then delivered to the defendant.

The testimony of the plaintiff tended to prove that he con- tracted with the defendant for the purchase of said two notes and mortgage, that he paid over the amount of the notes in money to the defendant, that the defendant delivered him the two notes, and agreed to deliver the mortgage deed, and that

afterwards he refused to deliver the deed upon the plaintiff's demand.

The testimony on the part of the defendant is not detailed, but it is apparent that he claimed that the transaction between him and the plaintiff was not a purchase and transfer of the notes, but a payment and surrender of them, and that he became under no obligation to deliver the deed to the plaintiff.

It is first insisted by the defendant that this very dispute, and disagreement of the parties, as to the character of the transaction, and whether it was a payment or, purchase of the notes and mortgage, precludes the party from maintaining this action, by showing that his is the true version of it ; that such a question can not be litigated in this form of action. In support of this objection the defendant relies on some observations made by the late Ch. J. WILLIAMS in *Pierce* v. *Gilson*, 9 Vt. 216. By reference to that case, it will be seen that it was an action of trover brought by the maker of a note against the payee, for refusing to surrender the note, which the maker claimed he had paid, and was entitled to have surrendered up to him. The court fully recognized the propriety of the action of trover in such a case, as being fully settled by authority, but Judge WILLIAMS, who delivered the opinion, advances the idea that the plaintiff. in such an action must not only show that the note is paid, but also that it was so understood by the payee, when payment is made ; that if he then claims that it is not fully paid, he has the right to retain the note in his own hands as evidence of his debt when he attempts to enforce payment of it by an action.

It seems to us that there must be very great practical difficulty in carrying out this suggestion, and holding that trover will lie to recover damages for refusing to deliver up a paid note in some cases, and not in others ; depending upon the particular circumstances of how the dispute arose between the parties in relation to the fact of payment. It is hardly conceivable that such an action could ever be brought, except where the payee denied the fact of payment, and if the action would only lie where payment was conceded by the payee, there would be no occasion for bringing the action at all.

But however it may be in such a case, directly between the parties to the instrument sued for, we think that what is said in that case has no influence upon this. Neither of the parties to this action were parties to this mortgage deed, and it was not the evidence of any debt or obligation from one to the other. It was a mere security, or the evidence of a security, for the payment of the notes, which the plaintiff claimed he had become the owner of by a purchase from the defendant. As between these parties it was merely a piece of property, which might belong to the one or the other, and whether the title and ownership of it was in the plaintiff or not, depended upon the fact whether he had purchased it from the defendant; and it seems to us there is no reason why that question may not as well be tried in this action of trover, as if it had been any other piece of personal property, a horse or a cow.

The defendant also insists that if the plaintiff had purchased and paid for this mortgage deed, and then the defendant refused to deliver it to him, the plaintiff can not maintain trover for it, because the defendant, at the time of the sale to the plaintiff, had no legal interest in it, and that by a mere parol sale to the plaintiff none was conveyed to him. It is a familiar doctrine that a mortgage is regarded merely as an incident to the mortgage debt, and a security for its payment, and that a transfer of the mortgage debt carries with it the mortgage security, without any assignment of the mortgage in writing, or even any parol agreement to assign, or any delivery.

And in such case the purchaser, and real owner of the mortgage debt, may maintain a suit in chancery in his own name to foreclose the mortgage. Still, without a formal assignment of the mortgage the legal estate is still regarded as in the original mortgagee, after the breach of condition, and such equitable assignee can not maintain an action of ejectment in his own name to recover the mortgaged premises. In this sense it is true, the legal interest in this mortgage deed was not in the defendant when he sold it to the plaintiff, nor did the plaintiff acquire it by his purchase of it by parol.

It is precisely the same as the sale of a note, or other chose in action, which is not negotiable, or if it is, is not transferred

in the manner required to transfer the legal interest ; the holder is the real owner of it, as property, and has the sole right to collect and dispose of it, but still the legal interest is in another, so that if it becomes necessary to enforce it by an action, it must be brought in the name of the party to whom it was originally executed. Still in such action the right of the real owner will be protected, and the party in whose name the suit is brought will not be allowed to interfere, or do any act to prejudice the real owner.

In such case the real owner of the debt is regarded as having the legal interest in it, in all respects and for all purposes, except as to the mere form of prosecuting his legal remedy by action, and when he does that in the name of another, he has the same right to control and manage the suit as if in his own name.

In an indictment for stealing such an instrument, we apprehend it would be necessary to allege the property to be in the true owner, and not in the party in whom the technical right of action existed.

And so in an action of trover, when the suit is brought not to enforce the instrument itself, but for an unlawful conversion of it, as property, we think the real owner has such a title as to enable him to sue in his own name, and that a suit brought in the name of the party in whom was the technical right of action could not be sustained; indeed the unlawful conversion might be by him, and the suit be against him. The same views here expressed will be found expressed in the case of *Fisk et al.* v. *Brackett*, 33 Vt. 798, and though not the precise point of decision there, were sanctioned by the court in the decision of the case.

The defendant also claims that there was no sufficient evidence of a conversion by him to enable the plaintiff to sustain this suit. The plaintiff's evidence tended to prove that he purchased the notes and mortgage, and that the defendant agreed to get the deed and deliver it to him, but that afterwards he absolutely refused to deliver it, and said he should cancel it.

As nothing more remained to be done between the parties to

make the sale complete and perfect, except the delivery of the mortgage, the property passed without delivery, and the defendant's refusal to deliver was a conversion, if such refusal was wrongful at the time.

The cases read by the defendant's counsel, that a demand and refusal are only evidence of a conversion, and that a refusal to deliver is a conversion, only when it is in the power of a party to deliver, or he has wrongfully put it out of his power to do so, are unquestionable.

The evidence here showed that the deed was placed in Brown's hands for the defendant, and he was entitled to the possession of it at any moment he chose to take it, so that it must be regarded as virtually in the defendant's possession, and when he refused absolutely to deliver it, not upon the ground that it was not in his power to do so then, or that he wanted time to get it from Brown, but upon a denial of any right to it in the plaintiff we think it was sufficient evidence of a conversion to sustain the action.

In our view the court below erred in deciding that the plaintiff's evidence did not tend to show enough to sustain the action, and the judgment must be reversed, but as the court did not attempt to find the whole facts shown by the evidence on both sides, the case must be remanded for a new trial.