## NASH & WARDLOW *v.* KELLEY AND OTHERS.

### [ IN CHANCERY. ]

#### *Estoppel. Mortgage.*

M., having neither possession nor color of title of mortgaged premises, mortgaged them to S., with full covenants of title and warranty. Afterwards, the premises having become vacant, the notes secured by the first mortgage were assigned to M., who subsequently, and while they were yet current, assigned them to the petitioners, who purchased them in good faith. Afterwards, the first mortgagors conveyed their interest in the premises to M., in consideration whereof M. agreed to surrender said notes to be cancelled, and pay them for their improvements. Subsequently, the petitioners still holding said notes, M. procured the mortgage securing them to be discharged of record. *Held*, that as M. could lawfully own and sell the notes and invest the purchaser with title thereto, the debt represented by them did not inure to S., to feed the estoppel created by the covenants in M's mortgage, and that the petitioners obtained a perfect title to the notes, as of negotiable paper, and therefore took all the accessory and incidental benefits legally attached to them.

PETITION FOR FORECLOSURE in common form. The petition was brought to foreclose a mortgage on lot No. 50 on Drew's plan of city lots in the city of Burlington, executed by Ellen Welch and Patrick, her husband, on April 10, 1873, to secure to Catherine Kelley the payment of $450, specified in their nine fifty-dollar notes of that date, given for the purchase-money of said lot, of which notes the petitioners had become the owners, through one Patrick McKenzie, to whom they had been transferred by the

Welches. The Welches, said Catherine and John W., her husband, McKenzie, Elliot M. Sutton, to whom McKenzie had executed a mortgage of said lot, and one George S. Cahill, who was alleged to have some interest in said premises, were made parties defendant to the petition.

The answer of defendant Sutton admitted the execution of the mortgage and notes, and the transfer of the notes to McKenzie ; alleged that at some time before January 2, 1875, while the Welches were the owners of the mortgaged premises, and after the alleged transfer of the notes to McKenzie, but before the pretended transfer to petitioners, the Welches, professing to be unable to pay said notes, agreed with McKenzie to convey and surrender said premises to him, and that he agreed to surrender said notes ; that McKenzie took possession of the premises under that agreement, and there remained until after the execution of the mortgage thereinafter mentioned, and should have surrendered said notes ; that on January 2, 1875, defendant Sutton, to whom McKenzie was then largely indebted, and for whom said defendant was about to incur further liability, knowing that McKenzie was in possession of the premises, believing that they had been conveyed to him by the Welches, and that he was the owner thereof, and that the notes had been surrendered to the Welches, to secure himself for said indebtedness and liability, took from said McKenzie and Rose A., his wife, a mortgage of said premises, together with other lands then owned by McKenzie, and that said defendant thereafter had a valid claim under said mortgage for about $2,000 ; denied all knowledge as to the alleged interest of said Cahill, but admitted that said defendant was informed and believed that on May 6, 1875, the Welches conveyed said premises in accordance with said agreement, and that on the 13th of the same month the Kelleys discharged the mortgage that was sought to be foreclosed.

The answer was traversed and testimony taken. It appeared that on April 10, 1873, Catherine Kelley conveyed the land described in the petition to Ellen Welch, and took in payment therefor nine promissory notes for $50 each, signed by said Ellen and her husband, payable to said Catherine or order, in one, two,

&c., years, respectively, secured by mortgage on the property so conveyed ; that the Welches went into possession, made certain improvements, and remained in possession until January 9, 1875, when they removed, and left the premises vacant ; that on March 12 then next, John W. Kelley, Catherine's husband, turned out the notes to Patrick McKenzie, in payment of or as security for a stock of goods ; that on March 15, McKenzie turned them out, they being then indorsed by the payee, to the petitioners, as security for a debt that he then owed them, and for indorsing a note for him, the petitioners taking them in good faith, after examining the city records, and finding the mortgage undischarged thereon ; that on May 6, the Welches conveyed the land to McKenzie, who agreed in consideration therefor to surrender the mortgage notes to be cancelled, and to pay them in goods for their improvements ; that on May 13, McKenzie procured Kelley to discharge the mortgage on the record, and promised to surrender the notes on the next day ; that on January 2, 1875, before the Welches went out of possession, and before McKenzie had any color of title, McKenzie executed a mortgage to defendant Sutton, with full covenants of title and warranty, to secure payment of a debt, and for future advances.

*Wales & Taft*, for the defendant Sutton.

Could McKenzie, after he had purchased the mortgage in question, enforce it against Sutton ? It does not follow from the general rule that the mortgage security follows the note. There is no rule by which the assignee takes any greater interest in the mortgage than the assignor possesses. The mortgage is not negotiable. It is nothing but a chose in action ; and an assignment of it carries nothing with it but the rights of the assignor. *Bailey* v. *Smith*, 14 Ohio St. 396. In case of successive assignments of a mortgage without notice, the earlier assignment prevails. *Muir* v. *Schenck*, 3 Hill, 228. Where equitable claims conflict, the rule at law and equity is the same,—*qui prior est tempore, potior est jure.*

A grantor, having no title, but conveying by deed with covenants, is estopped from setting up an after-acquired title. And

the estoppel " operates upon the title so as actually to alter the interest in it in the hands of the heirs or assigns of the person bound by the estoppel, as well as in the hands of such person himself." Rawle Cov. Title, 413 ; *Jarvis* v. *Aikens*, 25 Vt. 635. The law presumes that the party acquired the title for the purpose of fortifying the title of his grantee, and, as REDFIELD, J., says in *Blake* v. *Tucker*, 12 Vt. 44, *he could have no other honest intent.* The same rule obtains in case of a mortgage with covenants of warranty. *Somes* v. *Skinner*, 3 Pick. 51 ; *Jarvis* v. *Aikens*, 25 Vt. 635 ; *White* v. *Patten*, 24 Pick. 324 ; *Brundred* v. *Walker*, 1 Beasley (N. J. Ch.) 140 ; *Amonett* v. *Amis*, 15 La. An. 225 ; 3 Washb. Real Prop. 99.

Whoever claims under one who is bound by an estoppel, is himself bound by the same estoppel. *Somes* v. *Skinner*, 3 Pick. 51 ; *Douglass* v. *Scott*, 5 Ohio, 195 ; 3 Washb. Real Prop. 110. But the deed must convey no title in order to be an estoppel. 3 Washb. Real Prop. 105.

A decision adverse to the petitioners will not be at all in conflict with our registry system ; but, on the contrary, in perfect accord therewith. *Jarvis* v. *Aikens, supra ; White* v. *Patten*, 24 Pick. 324.

*W. L. Burnap*, for the petitioners.

The transfer of the notes to the petitioners operated as an equitable transfer of the mortgage given for their security. *Belding* v. *Manly*, 21 Vt. 550 ; *Page* v. *Pierce*, 26 N. H. 317.

It was not competent for Kelley, having transferred the notes to McKenzie, to discharge the mortgage. It is equally clear that McKenzie, having transferred them to the petitioners, had no right to procure the entry of the discharge. The transaction was fraudulent, and the mortgage remains a valid security. *Brown* v. *Blydenburgh*, 7 N. Y. 141 ; *Page* v. *Pierce, supra ; Robinson* v. *Sampson*, 23 Me. 388.

When Sutton took his mortgage, it was with constructive if not actual knowledge of the existence of the mortgage in question. The subsequent fraudulent acts of McKenzie and Kelley cannot place him in any better position than he was before. Nor can the

acquisition of the title to the premises by McKenzie *subsequent* to the transfer of the notes to the petitioners, create any ground for the assertion of an estoppel by Sutton. The petitioners stand upon the original mortgage to Kelley, and not as the subsequent grantees of McKenzie. *Buckingham* v. *Hanna*, 2 Ohio St. 551; *Pendleton* v. *Rickey*, 32 Penn. 58; *Great Falls Co.* v. *Wooster*, 15 N. H. 452; Bigelow Estop. 355; 2 Sm. Lead. Cas. 7th ed. 701, 710. Sutton, under those circumstances, could acquire no interest in the premises paramount to the rights of the petitioners, and his equity must be postponed to theirs. *Jordon* v. *Forlong*, 19 Ohio St. 89; *Roberts* v. *Halstead*, 9 Penn. St. 32; and cases *supra*.

The opinion of the court was delivered by

REDFIELD, J. In April, 1873, Catherine Kelley conveyed lot No. 50 to Ellen Welch, and took back a mortgage to secure the purchase-money of $450, in nine $50 notes, signed by said Ellen and her husband, Patrick Welch. Welches lived on the premises until January 9, 1875. March 12, 1875, Kelley turned these notes over to Patrick McKenzie, as payment or security for a purchase of a stock of goods. March 15, 1875, McKenzie turned these notes out to the petitioners, to secure them for a debt, and for a further indorsement. On January 2, 1875, McKenzie mortgaged the premises to Sutton, with full covenants of title and warranty. On the 6th of May, Welch and wife conveyed the premises to McKenzie, who agreed, in consideration therefor, to surrender these mortgage notes to be cancelled, and pay Welch for his improvements. May 13, 1875, McKenzie procures Kelley to discharge the mortgage on the record, upon his promise to surrender the notes the next day. At the time McKenzie executed his mortgage of the premises to Sutton, he had no color of title, and Welch and wife were in possession, claiming to own the lot in question. At the time Welch and wife conveyed to McKenzie, May 6, 1875, the petitioners were the owners of the mortgage notes, and the equitable owners of the mortgage.

The mortgage is the incident of the debt, and the transfer of the notes operated as an equitable transfer of the mortgage given

for their security. *Belding* v. *Manley*, 21 Vt. 550. The discharge of the mortgage of record by Kelley, was fraudulent and inoperative as to the petitioners.

I. As between the parties and privies, the title acquired by McKenzie on the 6th of May, 1875, enured to Sutton in discharge of the covenants in the deed of January 2, 1875. And this is the effect upon subsequent-acquired title, notwithstanding the covenants were in a deed of mortgage. *Jarvis* v. *Aikens*, 25 Vt. 635.

But the petitioners claim under the original mortgage to Kelley as the owners of the mortgage notes. There is no question but that their title to the notes is absolute. But the counsel for Sutton claim, that as the petitioners derived their title to the notes through McKenzie *after* he had executed his mortgage to Sutton, the notes became purged, so to speak, of their mortgage security upon these premises. There is force in the claim that McKenzie himself would be estopped from arresting this mortgage against Sutton, by reason of his covenants. But, we think that it does not logically and necessarily follow that parties who had in good faith purchased the notes of McKenzie, might not be the absolute owners of the notes with all the equitable and incidental rights attached to them. The mortgage debt represented by the notes could not enure to Sutton, to feed the estoppel created by McKenzie's covenants; for the mortgage notes are property which McKenzie might lawfully own and sell, and vest good title in the purchaser. The mortgage without the notes is neither title nor evidence of title. It passes with the notes as an incident of the debt, and expires when the notes are paid.

II. The notes were made payable to Catherine Kelley, or orders, and by her indorsed, and at the time they were purchased by the petitioners they were current, negotiable paper; and no question is made but that the petitioners obtained the absolute and indefeasible title and ownership of the notes. They took the notes with all the rights that adhered to them—the personal responsibility of Welch and wife as signers; the guaranty of Catherine Kelley as indorser; and the mortgage security superadded.

Although the mortgage may be a mere *chose in action,* and the assignee may have obtained by an assignment no greater right or interest than the assignor possessed, yet, in this case, the purchasers of these notes obtained a perfect title as of current negotiable paper, and therefore take all benefit of the inherent qualities of the paper, and also all accessory and incidental benefits that legally are attached to it.

Judgment affirmed.