ISLAND POND NATIONAL BANK *v.* ALFRED LACROIX ET AL.

February Term, 1932.

Present: POWERS, C. J., SLACK, MOULTON, and THOMPSON, JJ.

Opinion filed February 4, 1932.

284

*Lee E. Emerson* for defendant Frank Gray.

*Oliver H. Cameron* and *Searles, Graves & Waterman* for the plaintiff.

THOMPSON, J. The plaintiff is the assignee of a mortgage executed by the defendant Alfred Lacroix on July 7, 1915, to one Oscar N. Nadeau to secure the payment of his promissory note of that date for nine hundred dollars, payable to said Nadeau or order, in yearly payments of fifty dollars or more, with interest annually.

This is a proceeding to foreclose the mortgage. The bill was taken as confessed as to defendants Lacroix and Solon Gray, administrator. Defendant Frank Gray answered to the bill. The substance of his answer is that he has a title which is superior in equity to that of the plaintiff. There was a hearing before the chancellor and a finding of facts was filed. Defendant Frank Gray excepted to various findings, and a bill of exceptions was allowed and filed. There was a decree against all of the defendants. Defendant Frank Gray, hereinafter called the defendant, was allowed and took an appeal from the decree.

The plaintiff claims that the defendant's bill of exceptions is not before this Court and cannot be considered a part of the appeal because it was not filed within twenty days from the date of the decree, that being the time within which an appeal from a final decree may be filed. G. L. 1561. G. L. 1511, provides that exceptions taken on the trial of controverted questions of fact before a chancellor shall be available on appeal

in the same manner as in county court causes tried by the court. This question was before this Court in *Essex Storage Elec. Co.* v. *Victory Lumber Co.,* 93 Vt. 437, 445, 108 Atl. 426, and it was there held that, under the provisions of G. L. 1511, construed with the provisions of G. L. 1608, a party excepting to the findings of a chancellor has thirty days from the day on which a final decree is filed in which to file his exceptions. *Gray* v. *Brattleboro Trust Co.,* 97 Vt. 270, 273, 122 Atl. 670; *Fire District, etc.* v. *Graniteville Water Co.,* 102 Vt. 511, 150 Atl. 459. Also, see *United States* v. *Cano,* 100 Vt. 111, 135 Atl. 1. It appears from the record that the defendant's exceptions were seasonably filed, so they are properly before us for consideration.

It appears from the finding of facts and exhibits referred to that on July 7, 1915, the defendant, by his warranty deed, conveyed a farm of about 174 acres in the town of Morgan to said Alfred Lacroix; and on the same day said Lacroix executed and delivered a note for $4,800 and a mortgage of said premises securing said note to the defendant. Said note was given for the purchase price of the premises, and included a mortgage for $1,400 to the plaintiff, which the defendant assumed and agreed to pay. There is a notation on the mortgage from Lacroix to the defendant that said mortgage of $1,400 had been paid by the defendant. On the same day, Lacroix also gave a note for $350, secured by a second mortgage of the same premises to Charles J. Oben, and a note for $900, secured by a third mortgage of the same premises, to said Oscar N. Nadeau. This third mortgage states that it is given to secure the payment of a part of the purchase price of said premises, and, also, that the premises "are free from every encumbrance except a mortgage to Frank Gray, this day given for $4800.00, and a mortgage to Charles J. Oben, also this day given for $350.00."

On November 25, 1925, Lacroix and his wife executed and delivered to the defendant their note, dated June 1, 1925, for $4,400, the amount then due on the note for $4,800, and a mortgage securing the same on the identical premises covered by the mortgage securing the note for $4,800, and it was recorded in the land records of Morgan on November 27, 1925. This mortgage describes the premises as "free from every encumbrance." On the same day the defendant discharged his mortgage secur-

ing the note for $4,800, and, on November 27, 1925, the discharge was recorded on the same page on which the mortgage was recorded.

The chancellor finds concerning this transaction as follows: "The defendant Frank Gray testified that he was induced to discharge his $4800. mortgage and surrender to Lacroix the $4800. note and accept the $4400. mortgage and note by statements made to him by Lacroix that the $900. Nadeau mortgage had been paid and discharged, and that he, Lacroix, desired to give a new note and mortgage because of the fact of the change of title from himself alone to that of his wife alone and because of the fact that the $4800. note had become mutilated and written all over, and the defendant Frank Gray admitted that he did not inquire further or examine the records in any way to determine the truthfulness of the statement of said Lacroix. Defendant's Ex. C (the $4400. mortgage) shows that the property described therein was conveyed by said Lacroix and wife as free from every encumbrance. The fact is, said Gray relied upon, and was induced to accept the new note and mortgage and discharge the old mortgage and surrender the old note upon such statements and representations made to him by said Lacroix."

■ ■ The defendant excepted to these findings for the failure of the chancellor to find that the defendant discharged his first mortgage and note because he was induced to do so by the fraud practiced upon him by Lacroix. There is no error here, as the only conclusion to be drawn from these findings is that the act of the defendant in discharging his mortgage and note was induced by the fraud of Lacroix. *Roberts* v. *Hughes et al.*, 86 Vt. 76, 79, 83 Atl. 807; *Ste. Marie* v. *Wells*, 93 Vt. 398, 108 Atl. 270. It is true that the chancellor says that the defendant admitted that he did not inquire further or examine the records in any way to determine the truthfulness of the statement of Lacroix; but the defendant was not required to make any inquiry nor to examine the records, as he was entitled to rely upon the statement made to him by Lacroix. *Manley* v. *Johnson*, 85 Vt. 262, 265, 81 Atl. 919; *Oben* v. *Adams*, 89 Vt. 158, 162, 94 Atl. 506; *Maidment* v. *Frazier*, 90 Vt. 520, 527, 98 Atl. 987; *Ste. Marie* v. *Wells*, *supra*.

■

Paragraphs 6 and 8 of the finding of facts, to which the defendant took several exceptions, are as follows:

"6. The history of the $900. Nadeau note as disclosed by the evidence is as follows: Within a short time after Nadeau received the $900. mortgage and note he sold and delivered the same to one A. C. Fellows. Just when did not appear. Fellows lost both note and mortgage, but the mortgage had been recorded before he lost the same, as shown by the certificate of the town clerk on Plaintiff's Ex. 1, and he obtained a certified copy of the record of said mortgage on the 19th day of June, 1926, and on June 25th, 1926, procured said Nadeau to reassign said mortgage to him, as shown by Plaintiff's Exhibit 1, and said Fellows also obtained a new note from said Lacroix, as shown by Plaintiff's Ex. 2. The evidence also discloses that Plaintiff's Ex. 2, the new $900. Nadeau note, was never seen or indorsed by Nadeau until the day the hearings on this case began at St. Johnsbury, when, at the request of one of the solicitors of the plaintiff bank, Nadeau indorsed said note without recourse, as shown by Plaintiff's Ex. 2. While Fellows was the owner of the said new $900. mortgage note, he offered the same to the defendant Gray, but the defendant Gray did not desire to purchase said note and mortgage. Just when this offer was made the evidence does not disclose, but thereafter on July 24, 1926, said Fellows sold and assigned the $900. Nadeau mortgage and note to the plaintiff in this case, as shown by said assignment on Plaintiff's Ex. 1. The evidence does not disclose whether Fellows had any information from the defendant Gray that he had obtained from Lacroix and wife the $4400. mortgage and note. The evidence does show that the plaintiff bank learned from Fellows that the $4800. mortgage and the $350. Oben mortgage had been discharged of record and that said plaintiff bank verified this information by an examination of the records in the town of Morgan, before it took the $900. Nadeau note and mortgage from Fellows, and the case does not disclose that the plaintiff bank, when it took said Nadeau note from said Fellows, knew that any indebtedness from Lacroix to Gray had not in fact been paid or that defendant Gray then held the $4400. mortgage and note. On the contrary the evidence disclosed that the first the plaintiff bank knew that the defendant Frank Gray claimed any interest in the property in question was when he

caused a petition for foreclosure to be served upon the plaintiff bank, December 11, 1926.''

''8. It is found that on July 24, 1926, the plaintiff bank loaned A. C. Fellows $1434.41 upon the demand note of the said Fellows (Plff.'s Ex. 7) which loan was secured only by the Lacroix-Nadeau note and mortgage for $900, and which was taken by said bank as collateral. This mortgage the plaintiff bank is now seeking to foreclose and it is found that the plaintiff bank, at the time of said loan to Fellows, took an assignment from said Fellows of said Lacroix-Nadeau mortgage and received said $900 note as security for said loan to Fellows in good faith, and gave full value therefor, namely $1434.41, as shown by Plaintiff's Exs. 5 and 6, and without any knowledge that the defendant Frank Gray had or claimed any interest in the real estate mentioned in the Lacroix mortgages.''

The defendant excepted to the finding in paragraph 6, that Fellows obtained a certified copy of the Nadeau mortgage on June 19, 1926, and on June 25, 1926, procured said Nadeau to *reassign* said mortgage to him, on the ground, in substance, that there was no evidence that the original Nadeau mortgage was assigned to Fellows or that Nadeau ever indorsed the original note secured by said mortgage, and consequently the plaintiff is not a *bona fide* purchaser of the same.

In order that the discussion of this exception and of other questions which we consider may be clearly understood, special attention is given to Plaintiff's Exhibits 1 and 2 at this time. The transcript of the evidence is referred to in the bill of exceptions, and is made controlling for the purpose of showing evidence or lack of evidence to support the finding of facts.

Plaintiff's Exhibit 1 is a certified copy of the original Nadeau mortgage as recorded in the land records of the town of Morgan. On the back of it there is a written assignment from Nadeau to Fellows, dated June 25, 1926, whereby Nadeau assigns and conveys to Fellows ''the premises within conveyed to me in mortgage and all my right, title, interest and estate in and unto the same''; and there is also a similar written assignment from Fellows to the plaintiff, under date of July 24, 1926. Both of these assignments are recorded.

Plaintiff's Exhibit 2 is as follows:

"MORGAN, VERMONT, July 7, 1915.

"For value received I promise to pay Oscar M. Nadeau or order, the sum of Nine hundred dollars with interest annually, payable Fifty dollars, or more, each year.

"This note is a copy of the original note given on the date aforesaid, and is signed by me to replace the original note which had been lost. The only indorsements or payments on said note were interest for three years, paid for years ending 1916, 1917, 1918, said note being secured by a mortgage executed July 7, 1915, on my farm, known as the O. P. Wilcox farm in Morgan.

Witness:

B. E. LEWIS. (Signed) ALFRED LACROIX."

On the back of this instrument are the written words, "Without recourse, Oscar N. Nadeau." The chancellor finds that Nadeau wrote these words on the back of the note on the day the hearing of the case began at St. Johnsbury. The record shows that the day was November 20, 1928. It appears from the findings that Fellows procured Lacroix to sign this instrument in June, 1926.

■ It is naturally inferred from the finding that Nadeau, a short time after he received the original $900 note and mortgage, sold and delivered them to Fellows, and from the finding that Nadeau "reassigned" his mortgage to Fellows on June 25, 1926, that Nadeau made a written assignment of the original mortgage and indorsed the original note when he sold and delivered them to Fellows, but this finding is not supported by the evidence. Nadeau was the only witness who testified to that transaction, and his testimony is not contradicted. He testified that the transaction was in September, 1915; that he delivered the original note and mortgage to Fellows in a farm deal, but did not assign the mortgage or indorse the note at that time; he was to do that later, but Fellows never got around to settle the farm deal.

This finding, however, is harmless, because it is not claimed by either party that Nadeau executed a written assignment of the mortgage or that he indorsed the note when he delivered them to Fellows.

It appears that the status of the debt secured by the mortgage from Lacroix to Nadeau was different when Plaintiff's Exhibits 1 and 2 were delivered by Fellows to the plaintiff from what it was when Nadeau delivered his note and mortgage to Fellows.

 The original note which Lacroix gave to Nadeau was a negotiable instrument. When Fellows received it from Nadeau without his indorsement on it, such title as Nadeau had therein vested in him, but he did not become a holder in due course. G. L. 2918. He did not become the bearer of it because the note was not payable to bearer. Brannan on Neg. Instr. Law (4th ed.) 339, 340. Fellows, by thereafter having Nadeau indorse the note, could have become a holder in due course as of the time of the indorsement. G. L. 2918. But when the note was lost, the debt evidenced by it became a nonnegotiable chose in action, because the note could not thereafter be indorsed. G. L. 2901; *Sulunias* v. *Poolos*, 148 Ga. 409, 96 S. E. 866. The debt, as a nonnegotiable chose in action, could be transferred only by written assignment.

It appears from the findings that the plaintiff did not receive from Fellows the original Nadeau note nor an assignment of the debt secured by the Nadeau mortgage, but "a new note," Plaintiff's Exhibit 2, which Fellows procured from Lacroix in June, 1926. The chancellor, in the finding of facts, treats this new note as a new obligation of Lacroix. The plaintiff has treated it in the same way, not only in its brief, but when it procured Nadeau to indorse it on the first day of the hearing below. There was no indorsement on the new note when Fellows delivered it to the plaintiff.

The defendant raises the question as to the plaintiff's rights under Plaintiff's Exhibit 2. He says that the plaintiff is not seeking to foreclose the premises to secure satisfaction of the original Nadeau note, but of what it claims to be a copy of it; that it does not elect to rest its claim on the original note, but introduces an entirely new note, claimed to be a copy, defectively negotiated to it. He says further that the mere assignment of the mortgage without the note is neither title nor evidence of title in the plaintiff; that the plaintiff took the mortgage and the new note as collateral security; that its rights are to be tested by those of a pledgee; that it has no title to the

debt secured by the mortgage as there has never been a legal delivery or assignment of the same to it; and it is not a *bona fide* owner of said debt.

There are two inconsistent findings as to the transfer of Plaintiff's Exhibits 1 and 2 from Fellows to the plaintiff. The chancellor finds in paragraph 6 of the findings that on July 24, 1926, Fellows sold and assigned the $900 Nadeau note and mortgage to the plaintiff, "as shown by said assignment on Plaintiff's Ex. 1." He finds in paragraph 8 that the plaintiff loaned $1,434.41 to Fellows upon his demand note, on July 24, 1926, and took an assignment from Fellows of the Nadeau mortgage and received said $900 note as security for said loan in good faith and for value, and without knowledge that defendant Gray had or claimed any interest in the mortgaged real estate.

▮ The chancellor is in error as a matter of law if he intended to find that the new note was assigned to the plaintiff by the assignment of Plaintiff's Exhibit 1. All that the assignment of that exhibit conveys is the "right, title, interest and estate" of the assignor in and to the mortgaged premises. It does not attempt nor purport to assign the debt secured by the mortgage. Such an assignment, unless accompanied by a transfer of the mortgage indebtedness, conveys at the most only a bare legal title to, without any beneficial interest in, the mortgaged premises. *Nash* v. *Kelley*, 50 Vt. 425, 430; 2 Jones, Mortgages (8th ed.), § 1018; *Farrell* v. *Lewis*, 56 Conn. 280, 14 Atl. 931; *Vermeule* v. *Vermeule*, 113 Me. 81, 93 Atl. 40; *Farnsworth* v. *Kimball*, 112 Me. 238, 91 Atl. 954. In the last-cited case it is held that a deed by a mortgagee, who had not made entry and was not in possession, conveyed no legal title to the land unless accompanied by a transfer of the mortgage indebtedness.

▮ In the case of a mortgage securing the payment of a debt, the debt is the principal thing, and the mortgage is an incident of it which accompanies and follows the debt wherever that may be assigned. *Gleason* v. *Owen*, 35 Vt. 590, 596; *Eugley* v. *Sproul*, 115 Me. 463, 99 Atl. 443. It passes with the assignment of the debt as an incident of it, and expires when the debt is paid. *Nash* v. *Kelley, supra; Johnson* v. *Clarke* (N. J. Ch.), 28 Atl. 558. When, as here, the original note and mortgage were made at the same time, and in relation to the same subject, they are to be construed together as if they were parts of the

same instrument, and a defense to one is a defense to the other. *Pierce* v. *Kibbee*, 51 Vt. 559, 563; *Eugley* v. *Sproul, supra; Phelps* v. *Lowell Institution*, 198 Mass. 179, 83 N. E. 989; *Randolph* v. *Bradford*, 204 Ala. 378, 86 So. 39; *Vorhees* v. *Nixon*, 72 N. J. Eq. 791, 66 Atl. 192.

It is also clear that the plaintiff took Plaintiff's Exhibits 1 and 2 as collateral security for Fellows' demand note for $1,434.41. The plaintiff states in its brief that it loaned the money to Fellows "on the strength of the Lacroix-Nadeau mortgage"; and we treat the plaintiff hereinafter as pledgee.

██ ██ When personal property is pledged, the pledgee acquires only a special property in the thing pledged with a right to retain possession and control of it until the debt for which it is pledged is paid or has otherwise been discharged. The general title to the property remains in the pledgor. *Jennings* v. *Gallagher*, 103 Vt. 169, 152 Atl. 802; *Samson* v. *Rouse*, 72 Vt. 422, 426, 48 Atl. 666; *White River Sav. Bank* v. *Capital Sav. Bank*, 77 Vt. 123, 128, 59 Atl. 197, 107 A. S. R. 754.

██ It is essential to the validity of a pledge that there be an actual delivery of the thing pledged to the pledgee. *Jennings* v. *Gallagher, supra; Samson* v. *Rouse, supra.* Mr. Story, in his work on Bailments, § 297, says: "It is of the essence of the contract that there should be an actual delivery of the thing to the pledgee. Until the delivery of the thing, the whole rests in an executory contract, however strong may be the engagement to deliver it; and the pledgee acquires no right of property in the thing. What will amount to a delivery of the thing is, in many cases, matter of law."

██ ██ In case of a pledge of corporeal property, a delivery of the property to the pledgee, without any written transfer of the title, is sufficient to pass the requisite special property; but choses in action, being incapable of manual delivery, cannot, as against third parties without notice, be pledged without a written transfer of the title, which performs the office of delivery of possession on a pledge of corporeal property. *French* v. *White*, 78 Vt. 89, 62 Atl. 35, 2 L. R. A. (N. S.) 804; *Whittle* v. *Skinner*, 23 Vt. 531; *White River Sav. Bank* v. *Capital Sav. Bank, supra*, page 128 of 77 Vt., 59 Atl. 197, 107 A. S. R. 754; *American Exchange Bank* v. *Federal Nat. Bank*, 226 Pa. 483, 75 Atl. 683, 27 L. R. A. (N. S.) 666, 134 A. S. R. 1071, 18 Ann. Cas.

444; *Christian* v. *Atlantic, etc., R. R.,* 133 U. S. 233, 241, 33 L. ed. 589, 10 Sup. Ct. 260, 263; *Millard* v. *Green,* 94 Conn. 597, 612, 110 Atl. 177, 182, 9 A. L. R. 1610; *Westinghouse Elec. & Mfg. Co.* v. *Brooklyn Rapid Transit Co.* (C. C. A. 2d), 263 Fed. 532.

In *Christian* v. *Atlantic, etc., R. R., supra,* the court said: "A pledge, in the legal sense, requires to be delivered to the pledgee. He must have the possession of it. * * * In the case of stocks and other choses in action, the pledgee must have possession of the certificate, or other documentary title, with a transfer executed to himself, or in blank (unless payable to bearer), so as to give him the control and power of disposal of it. Such things are then called 'pledges,' but more generally 'collaterals'; and they may be used in the same manner as 'pledges' properly so called. If there is no transfer attached to it, or accompanying the document, it is imperfect as a pledge, and requires a resort to a court of equity to give it effect."

In *Millard* v. *Green, supra,* the court, referring to a pledge of shares of stock by delivery, but without a written transfer, said: "If there was delivery merely with no transfer, the bank would be the equitable pledgee. Such a pledge may be made, but it is called an imperfect pledge, making suit in equity necessary for its enforcement, and leaving the pledgee subject to the equities of third persons and *cestuis que* trust."

In *French* v. *White, supra,* one Mackay deposited certificates of stock with the defendant as collateral security for notes given by Mackay to him. The transfer of the certificates to the defendant was by delivery only. No written assignment of them to the defendant was made.

This Court held that since there was no written transfer of the stock in question to the defendant, there was no pledge either at common law or under the statute; that no legal title to the stock passed to the defendant, and that later, when Mackay went into bankruptcy, the title to the stock vested in the trustee of his bankrupt estate.

The plaintiff, in its petition, declares upon the original Nadeau mortgage. While it alleges that it is the owner of the mortgage by virtue of the assignments of June 25, 1926, and July 24, 1926, it does not allege that it is the owner of the original Nadeau note or of the debt that is secured by the mort-

gage; nor does it set forth the new note, Plaintiff's Exhibit 2, or seek to foreclose the same. The prayer of the petition is "that the defendant's be decreed to pay to the clerk of the court for the benefit of the petitioner the sums due and that become due on said nine hundred dollar note" (original Nadeau note), etc.

It is not, and cannot be, claimed that there was a written assignment of the mortgage indebtedness to the plaintiff by Fellows unless the new note, Plaintiff's Exhibit 2, constitutes such an assignment; but such a construction cannot be given to this instrument. While Nadeau is named as payee in the new note, he had no title to, nor interest in, the mortgage indebtedness when Fellows obtained the note from Lacroix and transferred it to the plaintiff. His title and interest vested in Fellows when he transferred his original note without indorsing it to Fellows in 1915.

The transfer of the new note, without any indorsement on it, to the plaintiff by Fellows did not vest in it any title to the mortgage indebtedness, as it is only when the holder of a negotiable instrument *payable to his order* transfers it for value without indorsing it, that the transfer vests in the transferee "such title as the tranferor had therein." G. L. 2918; *Capital Hill Sav. Bank* v. *Rawlins Nat. Bank*, 24 Wyo. 423, 160 Pac. 1171, 11 A. L. R. 937, 951.

Since there was no written assignment of the mortgage indebtedness to the plaintiff, there was no pledge of the same. There was at most only an executory contract to pledge, but the pledge cannot take effect until there is a written assignment of the indebtedness to the plaintiff. *Samson* v. *Rouse, supra,* page 428 of 72 Vt., 48 Atl. 666.

The plaintiff claims that, although it knew the Nadeau mortgage was given subject to the defendant's original mortgage, yet, since it took the Nadeau mortgage and the new note relying upon the record of the discharge of the original mortgage and without knowledge of the $4,400 mortgage, the defendant's security is subordinate to the Nadeau mortgage; and it invokes the equitable rule that when one of two innocent persons must suffer, the one whose lack of caution or misplaced confidence occasioned the loss, or who placed it in the power of a third

party to perpetrate the fraud occasioning the loss, must bear the loss.

 The law is well settled that if a mortgagee, by reason of fraud or mistake, takes a new mortgage in the place of an old one, not in payment, but in continuation of the old indebtedness, and cancels the old mortgage without knowledge of an intervening lien, although such lien is of record, he will not be held to have subordinated his security to the intervening lien, in the absence of intervening rights of innocent third parties, if, at the time he cancelled the senior mortgage, the holder of the intervening lien had actual or constructive knowledge of the same. *McKenzie* v. *McKenzie*, 52 Vt. 271; *Howard* v. *Clark*, 71 Vt. 424, 428, 45 Atl. 1042, 76 A. S. R. 782; *Hill* v. *Ritchie*, 90 Vt. 318, 98 Atl. 497, L. R. A. 1917A, 731; *Sullivan* v. *Williams*, 210 Ala. 363, 98 So. 186; 33 A. L. R. 147; *Wooster* v. *Cavender*, 54 Ark. 153, 15 S. W. 192, 26 A. S. R. 31; *Roberts* v. *Doan*, 180 Ill. 187, 54 N. E. 207; *Hanlon* v. *Doherty*, 109 Ind. 37, 9 N. E. 782; *Young* v. *Shaner*, 73 Iowa, 555, 35 N. W. 629, 5 A. S. R. 701; *Kern* v. *Hotaling*, 27 Ore. 205, 40 Pac. 168, 50 A. S. R. 710; *Bormann* v. *Hatfield*, 96 Wash. 270, 164 Pac. 921, L. R. A. 1917E, 1052; *Vannice* v. *Bergen*, 16 Iowa, 555, 85 A. D. 531; *Hutchinson* v. *Swartsweller*, 31 N. J. Eq. 205.

In the last-cited case the court said: "Nor will the taking of a second security, of equal degree with the first, for the same debt, by operation of law extinguish the first. Acceptance of the second will only operate as an extinguishment of the first, when it is shown that the creditor accepted the second mortgage with the understanding that that should be its effect. * * * Where a first mortgagee accepts a new mortgage and surrenders a prior one for cancellation, in ignorance of an intervening lien, equity, in the absence of laches or other disqualifying fact, will restore him to his original position."

 It fairly appears from the findings that when the defendant cancelled his first mortgage and took the new note and mortgage, which were for the amount due on the old note, he did not take the new mortgage and note in payment of the mortgage indebtedness, but in continuation of the same, and that he did not intend to relinquish or destroy the priority of his senior lien.

It is expressly stated in the Nadeau mortgage that it is subject to the defendant's first mortgage. Fellows took and held the original Nadeau note and mortgage subject to the defendant's first mortgage, and the priority of the lien of that mortgage to the Nadeau mortgage and the debt secured by it will be recognized and upheld in equity as against him. He has suffered no wrong, but remains in the full enjoyment of all his rights. *McKenzie* v. *McKenzie, supra.*

The chancellor found that the plaintiff, before it took the new note, ascertained that the defendant's first mortgage had been discharged on the record, and that it took the assignment of the Nadeau mortgage and received the new note as security for its loan to Fellows in good faith and for value received without any knowledge that the defendant had or claimed any interest in the mortgaged premises. But the chancellor, in applying the law to these findings, misconstrued the legal effect of the new note as an assignment of the mortgage debt.

The decree of foreclosure against the defendant shows that the chancellor construed the new note as a legal assignment of the mortgage debt, but, as we have already held, that is not the legal effect of that instrument.

The decree also shows that the chancellor held, as matter of law, that the plaintiff was a *bona fide* purchaser or holder of the Nadeau mortgage debt, and therefore its equity was superior to that of the defendant.

Whether a person is a *bona fide* purchaser is usually a mixed question of law and fact, but where, as here, the facts have been found, it is a question of law for the court.

The rule is that upon a question of priority a pledgee stands on the same footing as a purchaser, and is deemed a holder for value to the extent of his lien. His interest in the property pledged is a legal interest sufficient to invoke the rule protecting *bona fide* purchasers; and therefore, where he receives possession of the property from the pledgor in good faith, that is, where there is absence not only of participation in the pledgor's fraud, but of knowledge or notice of the fraud or of facts and circumstances calculated to put a prudent man on inquiry, he is deemed a *bona fide* purchaser and takes priority over outstanding equities. 49 C. J. 927; *Austin* v. *Hayden,* 171 Mich. 38, 137 N. W. 317, Ann. Cas. 1915B, 894; *Northwestern*

*Portland Cement Co.* v. *Atlantic Portland Cement Co.,* 174 Cal. 308, 163 Pac. 47; *Rose* v. *Coble,* 61 N. C. 517.

It will be noticed that this rule assumes that the pledgee has the possession of the thing pledged. It is the delivery of possession of corporeal property and a written assignment of a nonnegotiable chose in action that gives the pledgee the legal title and interest sufficient to control and dispose of the pledged property, and to invoke the rule protecting *bona fide* purchasers. *White River Sav. Bank* v. *Capital Sav. Bank, supra; French* v. *White, supra; Northwestern Portland Cement Co.* v. *Atlantic Portland Cement Co., supra; Wells* v. *Archer,* 10 Serg. & R. (Pa.) 412, 13 A. D. 682; *Douglas* v. *People's Bank,* 86 Ky. 176, 5 S. W. 420, 9 A. S. R. 276.

It is generally held that the doctrine which protects a *bona fide* purchaser for a valuable consideration and without notice of existing equities is applicable solely to the purchaser of a legal title or interest, and if he purchases only an equitable title he takes it subject to all the countervailing equities to which it was subject in the hands of his vendor; and that where both parties claim by an equitable title, the one who is prior in time is deemed the better in right. *Downer* v. *South Royalton Bank,* 39 Vt. 25, 30; *Boone* v. *Chiles,* 10 Pet. 178, 9 L. ed. 388; *Hawley* v. *Diller,* 178 U. S. 476, 44 L. ed. 1157, 20 Sup. Ct. 986; *Henry* v. *Black,* 213 Pa. 620, 63 Atl. 250.

In *Starr Piano Company* v. *Baker,* 8 Ala. App. 449, 62 So. 549, 551, which involved the purchase of a piano, the court said the words "legal title," which a *bona fide* purchaser must acquire, "import merely a legal interest, lien, or estate in the property, such as is cognizable in a court of law, as contradistinguished from such interest or right in the property as is only recognized in a court of equity."

In *Villa* v. *Rodriguez,* 12 Wall. 323, 20 L. ed. 406, the court said: "The doctrine involved (*bona fide* purchaser) has no application where the rights of the vendee lie in an executory contract. It applies only where the legal title has been conveyed and the purchase-money fully paid."

Since the plaintiff did not take a written assignment of the mortgage debt, it did not acquire any legal title or interest therein, and it is not a *bona fide* purchaser. Nor does the assignment of the mortgage aid it in this respect. The mort-

gage, as an incident to the debt, is inseparable from it. It has no separate existence, and it cannot be treated as an independent chose in action. As it is said in *Pierce* v. *Kibbee,* 51 Vt. 559, 563: "In equity a mortgage is regarded as a mere security for a debt or obligation; and all defenses except the Statute of Limitation that can be made to the debt or obligation, can also be made to the mortgage."

The trouble with the plaintiff's situation is that its failure to take a legal assignment of the Nadeau mortgage debt was not due to its reliance upon the discharge of the defendant's first mortgage nor upon any act of the defendant, but to its own negligence. In its transaction with Fellows it is chargeable with knowledge of the law, which knowledge includes the provisions of G. L. 2918. When it took the new note, it knew that the original Nadeau note had been lost, and it is chargeable with knowledge that it could not obtain a legal title or interest in the mortgage debt by a transfer of the new note to it by Fellows without any indorsements on it.

As we have already said, the result of the plaintiff's transaction with Fellows was an executory contract to pledge, but not a valid legal pledge. However, it is well settled that where a contract for a pledge fails for want of a delivery of the article agreed to be pledged, such contract nevertheless creates an equitable lien, which is valid between the parties and which is enforceable against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or encumbrancers with notice, but not enforceable against creditors who have a prior lien on the property. 3 Pomeroy, Eq., § 1235; *Millard* v. *Green, supra; Davis* v. *Billings,* 254 Pa. 574, 99 Atl. 163; *Fletcher Amer. Nat. Bank* v. *McDermid,* 76 Ind. App. 150, 159, 128 N. E. 685; *Cameron* v. *Orleans, etc., R. R. Co.,* 108 La. 83, 32 So. 208, 217; *In re Sullivan Co.* (D. C.), 247 Fed. 139, affirmed, 254 Fed. 660, 166 C. C. A. 158.

The contract to pledge created an equitable lien which the plaintiff can enforce in equity against Fellows but not against the lien of the defendant's first mortgage, which is superior to the lien of the Nadeau mortgage in the hands of Fellows who still holds the legal title to the mortgage debt. The plaintiff holds its equitable lien subject to all equities

302

superior to the title of Fellows. It has no better standing against the lien of the defendant than Fellows had at the time of the attempted pledge.

The chancellor found that on November 1, 1926, Lacroix executed a quitclaim deed of the mortgaged premises to the defendant, and that the defendant received the deed, but it had not been recorded.

The plaintiff claims this created a merger of the lien of the defendant's mortgages and the fee-simple estate of the mortgagor, with the result that his mortgages were extinguished.

In *Howard* v. *Clark,* 71 Vt. 424, 427, 45 Atl. 1042, 76 A. S. R. 782, this Court said that, as a general rule, the conveyance of the equity of redemption to a mortgagee will not constitute a merger of the legal and equitable estates when, from all the circumstances, it is apparent that the best interests of the mortgagee require the two estates to be kept separate, unless it is found that such was the intention of the mortgagee.

The chancellor made no finding as to the intention of the defendant in taking the quitclaim deed. It is apparent from the record that the best interests of the defendant require the two estates to be kept separate, and, in the absence of a finding that it was the intention of the defendant that the estates should merge, we hold that there was no merger. *Marshall* v. *Wood,* 5 Vt. 250, 254; *Walker* v. *Baxter,* 26 Vt. 710, 715; *Carpenter* v. *Gleason,* 58 Vt. 244, 248, 4 Atl. 706; *Belknap* v. *Dennison,* 61 Vt. 520, 17 Atl. 738; *Gleason* v. *Carpenter,* 74 Vt. 399, 402, 52 Atl. 966; *Lockhard* v. *Joines* (N. J. Ch.), 23 Atl. 1075; *Hanlon* v. *Doherty,* 109 Ind. 37, 9 N. E. 782.

In cases like the instant case, as a rule, a party who claims to be the assignee and *bona fide* owner of a nonnegotiable chose in action and seeks to foreclose a mortgage securing the same, should allege that he is the actual *bona fide* owner thereof and set forth when and how he acquired title thereto. The assignee and *bona fide* owner of a nonnegotiable chose in action is required to allege such facts to maintain an action at law in his own name, and there is no reason why the plaintiff in a chancery proceeding should not be equally specific in his pleading. The plaintiff in this case has not even alleged that it is the owner of the Nadeau mortgage debt. And also, as a rule, a party, who, by reason of fraud or mistake takes a new mortgage

in the place of an old one, and discharges the old one on the record, brings a cross bill to have the priority of the lien of the old mortgage restored or preserved. This was not done in this case.

The defendant raised the question of the priority of his first mortgage in his answer; both parties tried the case below and in this Court as one of priorities, irrespective of the pleadings; and we have so considered the case in disposing of it.

*The decree for the plaintiff against defendant Frank Gray is reversed, and cause remanded, with mandate that the petition, as to him, be dismissed with costs.*

POWERS, C. J., agrees that the plaintiff took the Nadeau note subject to outstanding equities in favor of the parties to it, but does not agree that it took it subject to secret equities in favor of third persons—latent equities as they are called in the books. He thinks the plaintiff did all that the law required of it when it examined the records and found no encumbrance ahead of the one it took over. He would affirm the decree.