JOHN STRONG *vs.* RETURN STRONG.

The equitable interest of the assignee of a *chosen in action* is protected at law, against a fraudulent discharge by the nominal plaintiff to the defendant, obtained after notice to the defendant of the assignment.—And evidence of such assignment and notice before action brought is admissible under the general issue.

A foreclosure of the equity of redemption upon a mortgage does not operate as a discharge of the debt secured by the mortgage.

The mortgagee may, notwithstanding such foreclosure, sue for and recover the debt secured by his mortgage ; but such recovery is good cause for opening the decree of foreclosure.

So, a *chose in action,* assigned in pledge as additional security of a debt collateral to a mortgage, may be collected by the assignee, notwithstanding the foreclosure of the mortgage.

THIS was an action of assumpsit commenced in Rutland county court, upon a note of hand, a copy of which is recited in the exceptions which follow. Plea, the general issue, and judgment for the plaintiff. The cause came before this court on a motion by the defendant for a new trial founded on exceptions taken at the trial below, and allowed by the judges and certified up as follows :—

On the trial of this cause, and after the plaintiff had read the note declared upon, the defendant gave in evidence a paper, made and delivered to him by said *John Strong,* in the words and figures following, to wit :

[COPY.]

"$396,83. Pawlet, 7th April, 1817.

"For value received, I promise to pay *John Strong* three hundred and ninety-six dollars and eighty-three cents, one half payable in two years from the first day of May next, and one half in four years from May next, with use from the first of May next. RETURN STRONG.

"Received, Pawlet, 22d March, 1819, of *Return Strong,* four hundred and seventeen dollars and thirty-one cents, on the note of which the above is a copy ; which, together with thirty-three bushels of rye, by the said *Return* paid to *Stephen W. Dana,* on said note, is in full of the same. JOHN STRONG"

And thereupon the counsel for the plaintiff offered to prove, that before the execution and delivery of the aforesaid paper, the said *John Strong* sold and delivered the note declared on by the plaintiff, to *Stephen W. Dana,* and endorsed his name blank thereon ; and that the amount thereof was to be applied on two notes in favour of said Dana, and against said John Strong, which were secured by deed of mortgage upon real estate in Pawlet ; and that notice of the sale of said note was given to the defendant by said Dana, before the execution of the aforesaid paper of the said John to the said Return ; and also that said note was originally put into the hands of said Dana upon the terms specified in the receipt hereafter mentioned, but that afterwards, upon a negotiation between the said John Strong and one *Isaac Bishop,* for the sale of said mortgaged premises, and to induce the said Isaac to purchase the same, it was agreed by the parties, that the said Dana should retain the said note, and apply the amount on his said mortgage debt—upon which

Rutland,
January,
1827.

Strong
vs.
Strong.

said Bishop did purchase said mortgaged premises---To which evidence the counsel for the defendant objected; but the same was admitted by the court, and testimony to that effect went to the jury: upon which the counsel for the defendant excepted to the opinion of said court, admitting said evidence, on the part of the plaintiff.

And to show that said Dana had no equitable claim upon the note aforesaid of the defendant, the counsel for the defendant offered in evidence, on said trial, further, a paper signed by the said Stephen W. Dana, purporting that the note of the defendant on which the plaintiff has declared, was received by said Dana of the said John Strong, as a pledge for securing the payment of one of the notes, so secured by said deed of mortgage, as aforesaid, for the sum of $523,92, in the manner therein expressed; which paper was as follows:----"Received, Pawlet, Sept. 4, 1817, of John Strong, a note signed by Return Strong, of which the following is a copy :---[Here follows a copy of the note declared on.] The condition of the receipt of the above described note is, that if the said John, on or before the 15th October next, call on said Stephen, and then and there execute to him good endorsed note to the amount of five hundred and twenty-three dollars and ninety-three cents, payable $100 per month thereafter, then the above note is to be given up---otherwise it is to remain with said Dana for the security of the payment of a note of $523,92, against said Strong, this day sued.                                         S. W. DANA."

That in addition to the payment of the sum of $99,75, on the said note of the defendant, so assigned to said Dana as aforesaid, which was acknowledged by the counsel of said Dana, he the said Dana did, before the commencement of this action, bring his writ of ejectment, to recover the possession of the premises, so as aforesaid mortgaged for securing the payment of the two notes so held by the said Dana against the said John Strong, as aforesaid, and therein recovered judgment for the possession of said mortgaged premises, upon which a motion for time to redeem had been made by said John Strong, and time given by the court: which time had elapsed, and the said Dana had caused a writ of possession to be issued, by virtue of which the possession of said mortgaged premises was, by the proper officer, given to said Dana, all before the commencement of this action; and that said mortgaged premises were of greater value than the sum remaining unpaid upon the two notes so secured by said mortgage: which evidence was rejected by the court; and the defendant's counsel excepted to said opinion of said court; and the defendant prays that said exceptions may be allowed by said county court.     Allowed, &c.

Harmon and Langdon, for the defendant, in support of the motion, insisted,

First, That the note in question, being neither negotiated nor negotiable, is, of necessity, sued in the name of the payee, John Strong, whose discharge must of course be effectual---For,

*Rutland, January, 1827.*

Strong *vs.* Strong.

1, The defendant has contracted to pay to the plaintiff, and to no other; and one is bound, only, by his contract.

2. The contract, in this case, is with the plaintiff to pay to him, for his benefit, and not for the benefit of any other; the plaintiff, then, is not a trustee for any other, with the consent of the defendant, or in virtue of the contract of the defendant. ----1 *Bac. Abr.* 249.----1 *Swift's Dig.* 433.----2 *Con. Rep.* 505-6---*Gould's opinion in the same case*, 512.----*Archibold's Pleadings*, 51. ---7 *Term Rep.* 668-9-70.----1 *W. Blac. Rep.* 264.----1 *Campb. Rep.* 392.

3. *S. W. Dana*, then, could never have had any power to receive, or sue for the money on this note, which was not, from the nature of the case, revocable, so far as the defendant was concerned.----If the plaintiff could have given such a power, upon sufficient consideration, and has revoked, contrary to good faith, Dana must look where he has contracted, and seek his remedy of him who has made himself responsible.

4. This doctrine has been long sustained by the courts of this state, at law and in equity; the people have received it as the undoubted law of the land, and have acted accordingly.----*Adams* vs. *Johnson, Beckwith* vs. *Hayward et. al. Wetmore* vs. *Brush, Brayt. Rep.* 55.----*Saff. Cot. Wool & Linen Fac.* vs. *Prescott, Hull, trustee, Brayt.* 231, *A. D.* 1818.

The case of *Newell* vs. *Adams, Lampson,* trustee, *D. Chip. Rep.* 346, was in 1815, and could not be law.

5. The statute authorizing the negotiation of notes, would have been idle and useless, if the same right and the same remedy in substance existed before, and without it.----*Rev. Laws,* 144.

6. The late decisions, contrary to the settled rule, would establish an *ex post facto* law, of the worst features and tendency.

*Secondly.* The claim of Dana is, under a pretence of equity, unaided, but opposed by legal principles, to enforce an unconscionable and oppressive right against John Strong, the plaintiff in this case. Having foreclosed the mortgage on estate much more valuable than his whole debt, he would now make a farther collection; and to enable him to effect this oppressive purpose, asks the court to allow him the benefit of equitable principles, in opposition to the fundamental principles of law. But an unconscionable and oppressive claim, however legal, will never be enforced, even in a court of equity.----The facts offered in evidence by the defendant under this head of defence, ought, therefore, to have gone to the jury, and to have entitled him to their verdict.----3 *Con. Rep.* 62, *Derby Bank* vs. *Landon.*----4 *Con. Rep.* 315, *Brush* vs. *Curtis.*----1 *Campb.* 392, *Alner* vs. *George.*

*Phelps,* contra. The evidence objected to by the defendant, and admitted by the court, was pertinent, in as much as it was sufficient and proper evidence to avoid the receipt given in evidence by the defendant. The giving the receipt by John Strong, and the taking of it by the defendant, was a fraudulent act on the part of both, and ought not to affect the rights of

*Rutland,*
*January,*
*1827.*

*Strong*
*vs.*
*Strong.*

the party in interest. The receipt, under those circumstances, is no evidence of payment.

The only serious question in this case, is, whether this Court, as a court of law, can recognize the interest of Dana so far as to enable him to recover in the name of his assignee. But this question has been long since settled by repeated adjudications. And he cited *Delancy* vs. *Stoddart*, 1 *Term R.* 26---*Winch* vs. *Keely*, Ib. 619---4 *Term R.* 340---*Andrews* vs. *Barker*, 1 *Johns. Cas.* 411---*Woodell* vs. *Eden*, 2 Ib. 121---*Assignee of Townshend*, vs. *Furnes*, 3 *Johns. R.* 86---*Littlesfield* vs. *Story*, 3 Ib. 425--- *Perkins* vs. *Parker*, 1 *Mass. R.* 117---*Leigh* vs. *Leigh*, 1 *Bos. & Pul.* 447---*Assigns of Fowler* vs. *Maul*, 3 Ib. 40---*Payne* vs. *Rogers*, *Doug.* 407---*Jones* vs. *Wellon*, 13 *Mass.* 304---*Jenkins* vs. *Brewster*, 14 Ib. 291---*Cutts* vs. *Perkins*, 12 Ib. 206----*Newell* vs. *Adams*, 1 *D. Chip. R.* 346---*Bank of Burlington* vs. *Beach*, 1 *Aik. R.* 62.

There is no reason for turning the party round to seek a remedy in a court of chancery, when a court at law can give relief. By treating the receipt as fraudulent and void, the delay and expense of a process in chancery is avoided.

The argument, that a court cannot enforce the rule throughout so as to protect the rights of the assignee to the end, is not sound. A discharge of a note, and an officer levying money on execution, having notice of the interest of an assignee, may be made responsible to him.

The receipt given by Dana, showing the terms upon which the note was originally received by him, was superseded by the after agreement.

*Secondly.* The foreclosure of the mortgage by *Dana* affords no defence to this action---For,

1, A foreclosure of a mortgage is not regarded in this state as a satisfaction of the mortgage debt.

2. The note in question was received in part payment of the mortgage debt, and it is to be presumed that the amount was applied in liquidating the debt, and that the decree was taken for the balance only.

The opinion of the Court was pronounced by

HUTCHINSON, J, who, after stating the case, proceeded as follows :---Upon these exceptions two questions are raised :

1st. Whether the court rightly admitted the testimony offered by the plaintiff to avoid the force of the receipt produced by the defendant ?

2dly. Whether the court did right in rejecting the testimony offered by the defendant to show that S. W. Dana had no equitable interest in the note sued by reason of the contract of assignment ?

In disposing of the first point, we may observe, that its practical importance, and that intrinsick difficulty, which has resulted in a different practice in different governments, has occasioned a careful examination of the authorities upon which

both parties rely, so far as they were not already familiar to the Court.

Rutland,
January,
1827.

Strong
vs.
Strong.

There is one important circumstance in which all these authorities concur.—They all concur in this, that an assignment of a chose in action, for a valuable consideration, conveys to the assignee an equitable interest in the matter assigned ; and that, upon his giving proper notice of the assignment, his equitable interest will be protected in some way or other : but the conflict among the authorities arises from the diversity of opinion about the way in which this equitable interest should be protected.

It seems plain, that, in case of a *bona fide* assignment of a chose in action, a note, for instance, not negotiable, the assignor becomes a trustee for the assignee. His very assignment amounts to an authority to the assignee to use the name of the assignor for the collection of the note ; and it amounts to an undertaking on his part that he will not, in any manner, interfere so as to prevent a collection of the debt from the signer of the note for the benefit of the assignee ; and, should he thus interfere, it is a fraud upon the assignee, for which he has a remedy in some way. But his remedy, whether at law or in equity, must be against the assignor only, unless notice has been given to the debtor, of such assignment. After such notice, if the debtor procure a discharge from the assignor, with or without payment, and attempts to use it against the assignee, he thereby becomes particeps in the fraud of the assignor to defeat the assignment ; and thereby perfects his liability to the assignee in some way or other. And there is no doubt that he may find relief in a court of equity to correct this fraud, and compel the parties to the fraud to make good the orator. This was formerly, in England, the only mode of relief in such cases, and seems to be now the usual resort there. They consider the detection and correction of such fraud a proper subject of chancery jurisdiction. But the common law courts of England do not wholly refuse relief.

In the case of *Legh* vs. *Legh*, 1 *Bos. & Pul.* 447, the court of common pleas, upon a rule to show cause, set aside the plea of a release obtained from the assignor of a bond not negotiable.

In the case of *Payne* vs. *Rogers, Doug.* 407, the court of king's bench sustained a rule in behalf of the landlord, to show cause why a release obtained by the defendant from the plaintiff should not be cancelled, and the suit proceed for the benefit of the landlord, who was not the party of record, but for whose benefit the action was brought ;—On a hearing, the rule was made absolute.

In the case of *Alner* vs. *George*, cited by the defendant from 1 *Campb. Rep.* 392, *Lord Ellenborough* speaks in strong terms against the plaintiff's proving an assignment to avoid a receipt, as was done in this action ; but he grounds his decision upon his situation, sitting to try an issue sent down from the bench : and he observes, that, "had a motion been made in term time

48

*Rutland,*
*January,*
*1827.*

Strong
*vs.*
Strong.

to prevent the defendant from availing himself of his defence, perhaps the court might have interfered." He also alludes to the case of *Legh* vs. *Legh,* and says---"There the court set aside the plea upon an application to their equitable jurisdiction." While this case, therefore, militates in favour of the defendant on his objection to the testimony offered by the plaintiff, it does not present any barrier against the assignee's being in some way protected in his assignment, and obtaining relief. But no case is found in which the courts in England have admitted the exact course pursued in this case. Nor, when a discharge from the plaintiff is plead, have they furnished instances of a replication of an assignment and notice to the defendant. But, a leading case of that mode of pleading is furnished in a suit brought by *Winch,* a bankrupt, against *Keeley,* reported in 1 *Term Rep.* 619.

The decisions in Connecticut are opposed to the decision made by the county court upon this point. And yet the majority of the court, in the case cited from 2 *Con. Rep.* 505, decided that the assignee was the proper person on whom to serve a notice under an insolvent proceeding. But the courts in that state do not drive the assignee, in such cases, to a court of equity for relief; they sustain an action at law against a debtor who obtains such a discharge after notice of the assignment. In the states of Massachusetts and New-York, if the defendant pleads in bar a discharge thus obtained from the payee after notice of the assignment, the plaintiff, or, more technically, the assignee, in the name of the plaintiff, replies the assignment, and notice of the same to the defendant before the discharge was procured. This avoids the discharge, just as the replication of a new promise avoids the plea of the statute of limitations, plead to an action of assumpsit.---*See* 1 *Wheat.* 233, *Welch* vs. *Mandeville,* in error, and 5 *Ib.* 277, *Mandeville* vs. *Welch,* in error---In both which cases the Supreme Court of the United States decide, in an action at law, to protect the assignment with notice against the interference of the assignor. They also sanction the same mode of pleading adopted in Massachusetts and New-York, and that in *Winch* vs. *Keeley.* By the same rule, of course, when a receipt comes in as evidence of payment, under the general issue, and not by special plea, there can be no special replication of the assignment and notice; but the testimony, if available at all, must be let in, as in the present case, to avoid the force of the receipt. This scarcely need be mentioned, as there has been no objection for want of a special replication.

Three cases are cited from *Brayt. Rep. p.* 55, of decisions of the Supreme Court in this state, in favour of the defendant, upon this point. These are short notes of the cases;---of course the reasons of the decisions are not exhibited at great length. The two first of those cases appear to have been decided in the year 1817, and the third in the year 1820.---In which last the Court express themselves as not at liberty to depart from the

Rutland,
January,
1827.

Strong
vs.
Strong.

numerous precedents in this state.    It is undoubtedly true, that, when the last of said cases was decided, and perhaps when the others were, no such assignments were protected in suits at law;—and, indeed, but very few applications had then been made to a court of chancery in this state for relief in such a case.    I now recollect but one such application so far back as these decisions.—That was the case of *Parker & Wife* vs. *Grout*, decided above twenty years ago, in *Windsor* county.    There was a demurrer to the bill, which was overruled, as I now recollect, and relief granted.

There is no case reported of a decision in this state overruling those decisions cited from *Brayton*.    But the Supreme Court, in 1822, when holding the Court as the law then required, all the judges attending the trial of issues of fact, made two decisions directly overruling the former decisions upon these subjects.    It is believed one case was decided in *Bennington* county, and the other in *Washington* county.    These cases are not reported in any volume of reports ; but they soon became publick, were often spoken of, and the judges themselves spoke of them in the different counties on their circuits.    They intended it should be understood to be law, that the equitable interests created by such assignments would be protected in suits at law.

The present case urges upon the Court the necessity of making such a decision as we deem most expedient, upon a point upon which decisions have hitherto been so various.—In this the Court are not unanimous ; but our decision is, that the testimony offered by the plaintiff was correctly admitted.    It could be no small hardship for the assignee to be defeated in the suit at law, and pay a bill of cost to the same person from whom he must seek relief in a suit in chancery, and perform the routine of labour and expense to obtain such relief ; and in the mean time his whole remedy may be lost by the delay and the chances of death, poverty or absconding of the debtor. This is prevented by the decision we now make.    This avoids all circuity of action, and all needless actions.    It takes no questions of fact from the jury, like the setting aside of pleas in the English courts.    It imposes no hardship at all upon the defendant, for the assignee must personate the original payee in receiving payment, in all the circumstances of time, place, and kind of payment.    It requires him to act honestly, and not pay to one who has no right to receive the pay, to the injury of the one who has such right.    This he ought not to consider a hardship.    But this is no more required by our present decision than it is by the rules of morality, as understood by mankind at large—no more than is required by the more expensive and tedious process in chancery.    If payments have been made, or offsets exist, before notice of the assignment, the defendant has the full benefit of all these in this mode of pursuit as much as any other.    This defendant may have been ignorant of the law, and this decision may operate as a hardship upon him, but sure-

ly not more so than to have been called before this Court as a court of chancery, to account for the same transaction.

Strong
*vs.*
Strong.

We now proceed to inquire, whether the county court erred in rejecting the testimony offered by the defendant?

Here it must be noticed, that the county court did not decide that they would reject evidence that in fact showed *Dana* to have no equitable interest in this note; probably they would not have so decided. But they reject the particular testimony offered, as improper to evince such want of equitable interest. The purport of the testimony thus offered, was, that the note in question was delivered to said *Dana,* by said *John Strong,* as collateral security for the payment of a note before given by said *John Strong* to said *Dana,* and secured by a mortgage of real estate; and that a suit had been commenced by said *Dana,* and a decree of foreclosure obtained, and the time of redemption had expired, not before the obtaining of the receipt, but before the commencement of the present action. Now this could not be proper testimony to prove the fact contended for, unless the foreclosure of the mortgage was in law a discharge of the said note secured by the mortgage. We are all agreed, that it is not such a discharge. By the common law, and the constant decisions of the courts in this state, the mortgagee may recover upon his notes after the foreclose of his mortgage. This operates to open the decree of foreclosure, but does not bar the action upon the note. If, then, *Dana,* the mortgagee, had a right to sue his note secured by the mortgage, he had an equal right to pursue the collection of the collateral security for the payment of the same note.

Whether the defendant used the precaution, in taking his receipt from the plaintiff, *John Strong,* to take any contract or conveyance also from him, which will entitle the defendant to redeem the premises when this note is paid, must be a matter between them only.

This Court consider that the decision of the county court, rejecting the testimony offered by the defendant, was correct. The defendant takes nothing by his motion; and we direct judgment to be entered on the verdict, with interest to be added according to the statute, and additional costs.

PRENTISS, J. remarked, that it had been urged with great emphasis by the counsel for the defendant, that the law is *settled* on the first point. Now I think, said the judge, that the law has been settled in England for more than half a century. Their method of proceeding is a little different from the mode we are about to establish here.---But the principle being settled, it is not material as to the manner of giving it effect.

The law is so settled in Massachusetts, in New-York, and in the Circuit Court of the United States here; and uniformity of decisions in the several courts is much to be desired. I cannot, therefore, hesitate a moment to sanction the doctrine established by the present case.

Skinner, Ch. J. dissented. The reasons for his dissent will be found in the opinion pronounced by him in the next case.

*A. Warner* and *S. S. Phelps*, for the plaintiff.

*N. Harmon* and *C. Langdon*, for the defendant.