VERMONT SUPERIOR COURT
Windsor Unit
12 The Green
Woodstock VT  05091
802-457-2121
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 736-10-09 Wrcv



The Bank of New York Mellon
     Plaintiff

v.

Daniel Quinn
     Defendant

<u>Decision on Merits</u>

Plaintiff Bank of New York Mellon seeks foreclosure of a residential property owned by defendant Daniel Quinn. A merits hearing was held on May 31, 2024, at which plaintiff was represented by Atty. Katz, and at which defendant represented himself. The following facts were established by a preponderance of the credible evidence presented at the hearing.

Defendant is the owner of residential property on Route 12 in Woodstock. In August 2007, defendant borrowed $365,000 from Countrywide Home Loans, Inc. in exchange for repayment terms that included an adjustable interest rate and adjustable monthly payments. Defendant's note included a provision allowing the lender to accelerate the remaining payments in the event that defendant did not pay the full amount of each monthly payment on the date it was due. Defendant also secured his promise to repay by giving a mortgage on the residential property to Mortgage Electronic Registration Systems, Inc. (MERS) as "nominee" for the lender. A power of sale was included in the mortgage instrument.

Defendant failed to make his monthly mortgage payments in October 2008 and November 2008. On November 3, 2008, the loan servicer sent defendant a notice of intent to accelerate, explaining that a default had occurred, and that the full amount of the remaining principal would become due if defendant did not cure the default by December 3, 2008. Defendant did not cure by that date, and admitted at the merits hearing that he has not made any payments on his mortgage since then.

Some months passed before the foreclosure was filed. In August 2009, in anticipation of the foreclosure, MERS assigned the mortgage to plaintiff. A copy of the written assignment was attached to the complaint and recorded in the land records. A copy was also admitted as evidence at the merits hearing.

A copy of the note was also attached to the complaint and admitted as evidence at the merits hearing, but the copies attached to the complaint and admitted at the merits hearing are different. The copy attached to the complaint was made out to the order of the lender and did not contain any endorsements. The copy admitted as evidence at trial was endorsed in blank by Michele Sjolander, an

Order
736-10-09 Wrcv The Bank of New York Mellon vs. Quinn et al

Page **1** of **9**

executive vice president for the lender, who endorsed the note by stamping the words "PAY TO THE ORDER OF _____ WITHOUT RECOURSE," accompanied by her name, title, and signature. A witness from the current loan servicer brought the original note to the courthouse on the day of the merits hearing, and testified that she possessed the note as an agent for plaintiff. The court inspected the document and determined that it was the original note, that it included the endorsement in blank, and that it included the defendant's wet-ink signature. In other words, the evidence established that plaintiff was in possession of the original note at the time of the merits hearing, and that the original note was endorsed in blank. However, as discussed in more detail below, the evidence did not establish the date of the endorsement.

Plaintiff filed the present foreclosure action in October 2009. Almost fifteen years of procedural history have followed since then, the material aspects of which are that: (1) Judge Cohen denied plaintiff's motion for summary judgment in May 2010, (2) Judge Gerety granted plaintiff's renewed motion for summary judgment in May 2013, (3) Judge Teachout issued a judgment and decree of foreclosure by judicial sale in April 2014, (4) Judge Gerety vacated the judgment and decree of foreclosure in February 2020, following a lengthy bankruptcy stay, (5) Judge Gerety entered final judgment in defendant's favor in January 2022 following a procedural ruling made during a merits hearing, (6) the Vermont Supreme Court reversed the procedural ruling and the final judgment order in November 2022 and remanded the case to this court for a merits hearing, and (7) this court held a merits hearing on remand in May 2024. Along the way, there have been 297 indexed motions filed, totaling more than 5,800 pages of documents.

Defendant has argued since 2010 that plaintiff lacked "standing" to enforce the note when it filed the complaint. He has filed many motions raising the issue. In the May 2010 decision, Judge Cohen ruled that the issue of "standing" needed to be determined by the evidence presented at trial. Motion reactions since then have tended to reiterate that the issue of "standing" would be determined at trial.

Although the term "standing" is frequently used, this court doubts that "standing" is the correct legal framework for determining whether a foreclosure plaintiff is entitled to enforce a debt and foreclose upon a mortgage. The doctrine of "standing" emerged shortly before the New Deal as a method of determining whether and when courts should become involved in reviewing challenges to the constitutionality of legislative and executive-branch actions, e.g., *Tennessee Electric Power Co. v. Tennessee Valley Auth.*, 306 U.S. 118, 138–42 (1939); *Frothingham v. Mellon*, 262 U.S. 447, 487–88 (1921); 13A Wright & Miller, Federal Practice and Procedure: Juris. 3d §§ 3531–3531.1. The fundamental principle was that the American constitutional structure requires courts to refrain from becoming involved in "political controversies" or otherwise indulging "general complaints about the way in which the government goes about its business." *Allen v. Wright*, 468 U.S. 737, 760 (1984); *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 473–74 (1982); *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 149–50 (1951) (Frankfurter, J., concurring). In other words, the doctrine of "standing" is "built on a single basic idea—the separation of powers." *Food and Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 378 (2024) (quoting *United States v. Texas*, 599 U.S. 670, 675 (2023)).

In Vermont, the use of the standing doctrine is rooted in the provisions of the Vermont Constitution rather than its federal counterpart. *Ferry v. City of Montpelier*, 2023 VT 4, ¶¶ 10–16, 217 Vt. 450. Vermont cases have nevertheless repeatedly emphasized that the "standing" doctrine serves the purpose of enforcing "the separation of powers between the three different branches of government by confining the judiciary to the adjudication of actual disputes and preventing the judiciary from presiding over broad-based policy questions that are properly resolved in the legislative arena." *Parker v. Town of Milton*, 169 Vt. 74, 76–77 (1998); accord *Housing Our Seniors in Vermont Inc. v. Agency of Commerce & Community Development*, 2024 VT 12, ¶ 21; *Paige v. State*, 2018 VT 136, ¶ 8, 209 Vt. 379; *Turner v. Shumlin*, 2017 VT 2, ¶ 10, 204 Vt. 78; *Brady v. Dean*, 173 Vt. 542, 543 (2001) (mem.); *Hinesburg Sand & Gravel Co., Inc. v. State*, 166 Vt. 337, 341 (1997).

A private foreclosure action does not involve the separation of powers, nor challenges to the constitutionality of legislative or executive-branch actions, nor concerns about the subject-matter jurisdiction of the courts. It instead involves questions about negotiable instruments, mortgages, and assignments, which are different bodies of law that predate the development of the standing doctrine. In particular, the laws pertaining to assignments of the right to collect upon negotiable instruments emerged from evolving commercial practices prior to the American Revolution, and the applicable principles were reflected in early American cases as well as early Vermont foreclosure cases, e.g., *Welch v. Mandeville*, 1 Wheat. 233, 236 (U.S. 1816) (Story, J.); *Langdon v. Keith*, 9 Vt. 299, 300 (1837); *Strong v. Strong*, 2 Aik. 373, 376–80 (Vt. 1827). Eventually, the applicable rules came to be embodied in the Uniform Commercial Code and the "real party in interest" rule, which are the modern substantive and procedural rules that govern the question of whether the plaintiff in a particular case is entitled to enforce a negotiable instrument. See Renuart, *Uneasy Intersections: The Right to Foreclose and the U.C.C.*, 48 Wake Forest L. Rev. 1205, 1215–16 (2013) (discussing history); Weinstein, *The Non-Uniform Commercial Code: The Creeping, Problematic Application of Article 9 to Determine Outcomes in Foreclosure Cases*, 14 U.N.H. L. Rev. 267, 272–74 (2016) (same).

The Uniform Commercial Code provides the substantive rules regarding enforcement of negotiable instruments, such as promissory notes. Generally, a person is entitled to enforce a note if they show that they are the holder of the note, a nonholder in possession of the note who has the rights of an owner, or a person not in possession of the note who is nevertheless entitled to its enforcement. 9A V.S.A. § 3–301; *Wells Fargo Bank Minnesota, N.A. v. Rouleau*, 2012 VT 19, ¶¶ 12–13, 191 Vt. 302; *U.S. Bank Nat'l Ass'n v. Kimball*, 2011 VT 81, ¶ 13, 190 Vt. 210; see also 4 Hawkland UCC Series § 3-301:1 (explaining that UCC § 3-301 "neatly sweeps all of the persons who have the right to enforce an instrument under Article 3 into one section"). A plaintiff can show that they are entitled to enforce a note by showing that they are in possession of the original note, and that it was either issued payable to them or has been made payable to bearer through a blank endorsement. 9A V.S.A. §§ 3–201(a)–(b) & 3–205(b); *Rouleau*, 2012 VT 19, ¶ 12; *Kimball*, 2011 VT 81, ¶ 14.

Vermont Civil Procedure Rule 17(a) provides the procedural mechanism for ensuring that a plaintiff in a private foreclosure action is the "real party in interest," meaning "the person who, according to the governing substantive law, is entitled to enforce the right." 6A Wright & Miller, Federal Practice and Procedure: Civil 3d § 1543. If a court becomes aware during a foreclosure case that the plaintiff is not entitled to enforce the note, the rule provides an opportunity for the plaintiff to file a motion to substitute parties, or to amend the complaint to allege facts showing why the plaintiff is indeed the real party in interest. Vt. R. Civ. P. 17(a); *South Burlington Mechanical & Electrical*

*Contractors, Inc. v. Graybar Elec. Co., Inc*., 138 Vt. 580, 581 (1980). As used in foreclosure cases, the rule ensures that judgments are obtained only by "the person who possesses the rights sought to be enforced," and protects defendants from the risk of subsequent actions "by the party actually entitled to recover." 6A Wright & Miller, *supra*, at §§ 1542–45.

In the aftermath of the foreclosure crisis, courts became concerned that foreclosure complaints were being filed by plaintiffs who were not entitled to enforce the promissory notes, and that improper foreclosure judgments were being likewise obtained. See Levitin, *The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title*, 63 Duke L.J. 637, 639–40 (2013) (recounting history). A number of courts therefore began scrutinizing complaints and supporting documents to determine whether the plaintiff was entitled to enforce the note. Instead of using the "real party in interest" rule, however, these courts tended to question whether a particular plaintiff had "standing" to enforce the note. Decisions in foreclosure cases using the language of the "standing" doctrine began proliferating throughout the country. Although this court's research does not reveal any foreclosure cases referencing the "standing" of a plaintiff prior to the foreclosure crisis, there are now thousands of such cases across the country, including cases from the Vermont Supreme Court and its federal counterparts, e.g., *Rouleau*, 2012 VT 19, ¶ 13; *Kimball*, 2011 VT 81, ¶¶ 12–16; *In re Densmore*, 445 B.R. 307, 312 (Bankr. D. Vt. 2011); *In re Parker*, 445 B.R. 301, 305–06 (Bankr. D. Vt. 2011).

Courts and commentators have expressed concern that the public-law concepts contained within the "standing" doctrine can result in "conceptual confusions" and incorrect conclusions when applied to private-law claims. 13A Wright & Miller, *supra*, at § 3531. In particular, while both the "standing" doctrine and the "real party in interest" rule point in the same direction by focusing the attention of the court on whether the plaintiff is entitled to enforce the rights asserted in the complaint, there are important differences between the doctrines, as discussed in more detail below. At least four Vermont Superior Court judges have raised this concern over the past fifteen years, e.g., *Fitz-Rose v. CLP Stratton, LP*, No. 444-12-17 Wmcv, 2021 WL 8201990 at *3 (Vt. Super. Ct. Feb. 10, 2021) (Hayes, J.); *Burlington Educ. Ass'n v. Future Planning Associates, Inc*., No. 683-12-18 Wncv, 2019 WL 13172496 at *1–2 (Vt. Super. Ct. June 1, 2019) (Teachout, J.); *Aurora Loan Services, LLC v. Kirkpatrick*, No. S0498-09 CnC, 2013 WL 3288062 at *2–3 (Vt. Super. Ct. June 1, 2013) (Crawford, J.); *Hemond v. Frontier Communications of America, Inc*., No. S0991-09 CnC, 2012 WL 5379896 (Vt. Super. Ct. Oct. 1, 2012) (Grearson, J.), and many federal courts of appeal have expressed the same concern over the past fifty years, e.g., *Fund Liquidation Holdings LLC v. Bank of America Corp*., 991 F.3d 370, 380 (2d Cir. 2021); *Martineau v. Wier*, 934 F.3d 385, 392 (4th Cir. 2019); *First American Title Ins. Co. v. Northwest Title Ins. Agency*, 906 F.3d 884, 890 (10th Cir. 2018); *Norris v. Causey*, 869 F.3d 360, 366 (5th Cir. 2017); *Mitchell Food Products, Inc. v. United States*, 43 Fed. Appx. 369, 369–70 (Fed. Cir. 2002); *Federal Deposit Ins. Corp. v. Bachman*, 894 F.2d 1233, 1235–36 (10th Cir. 1990); *Malamud v. Sinclair Oil Corp*., 521 F.2d 1142, 1147 (6th Cir. 1975).

As applied to foreclosure cases, one important difference between the "standing" doctrine and the "real party in interest" rule involves the consequence of a determination that a particular plaintiff is not entitled to enforce the note. If the "real party in interest" rule is applied, the result is to allow a period of time for the correct plaintiff to be substituted as a party, or for the current plaintiff to amend the complaint to correct any perceived deficiencies. *Graybar Elec. Co*., 138 Vt. at 581. If the "standing" doctrine is applied, the result is dismissal of the case. *Kimball*, 2011 VT 81, ¶ 16. And although dismissal of a foreclosure case does not prevent a plaintiff from commencing a new

foreclosure case based upon a subsequent default, there are significant practical consequences for the plaintiff, including that the plaintiff cannot thereafter recover "any principal, interest, penalties, or other liabilities from borrowers to lender that accrued before the default and attempted acceleration on which the first foreclosure action was predicated." *Cenlar FSB v. Malenfant*, 2016 VT 93, ¶¶ 33–38, 203 Vt. 23.

A second important difference is that standing must be demonstrated "as of the commencement of suit." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.5 (1992); 13A Wright & Miller, *supra*, at § 3531. In foreclosure cases, this has been interpreted to mean that foreclosure plaintiffs must demonstrate that they were entitled to enforce the note "at the time the complaint was filed." *Kimball*, 2011 VT 81, ¶¶ 14–16; *Rouleau*, 2012 VT 19, ¶ 13. Under this rule, it is not enough for a foreclosure plaintiff to demonstrate that it was the holder of the note at the time of a merits hearing. A foreclosure plaintiff must also show that it "possessed the original note either made payable to bearer with a blank endorsement or made payable to order with an endorsement specifically to [plaintiff]" "at the time the complaint was filed." *Kimball*, 2011 VT 81, ¶ 14; accord *Jelic v. BAC Home Loans Servicing, LP*, 178 So.3d 523, 524–25 (Fla. Ct. App. 2015).

In other words, the use of the standing doctrine in foreclosure cases adds an element to foreclosure claims that did not previously exist. It is no longer enough for a foreclosure plaintiff to obtain a judgment by making the traditional demonstration that the defendant borrowed money, that the defendant breached their repayment obligation, that the repayment obligation was secured by a mortgage, and that the plaintiff is entitled to enforcement of the obligation. A foreclosure plaintiff must also show "as an indispensable part of [its] case" that it was entitled to enforce the note "at the time the complaint was filed." *Lujan*, 504 U.S. at 561; *Kimball*, 2011 VT 81, ¶ 14.

After conducting research, this court has not been able to find any doctrinal source for this additional element other than the "standing" doctrine. Both the Uniform Commercial Code and the "real party in interest" rule require plaintiffs to demonstrate their authority to enforce the note, but neither require dismissal of cases based solely upon whether plaintiff was entitled to enforce the note at the time the complaint was filed. And to the extent that the additional requirement is now included within Vermont Civil Procedure Rule 80.1(b)(1), the requirement is one of pleading rather than proof, and the requirement was not part of the rule when the complaint in this case was filed. See *Aurora Loan Services*, 2013 WL 3288062 at *1 n.4 (explaining that it was not until July 1, 2010 that Rule 80.1(b)(1) required plaintiffs to plead in their complaint that "the originals are in the possession and control of the plaintiff or that the plaintiff is otherwise entitled to enforce the mortgage note pursuant to the Uniform Commercial Code").

Nevertheless, Vermont is not alone. A number of states have held since the foreclosure crisis that plaintiffs must show that they were entitled to enforce the note at the time the complaint was filed, e.g., *McLean v. JP Morgan Chase Bank Nat'l Ass'n*, 79 So.3d 170, 174 (Fla. Ct. App. 2012); *Bank of America, N.A. v. Reyes-Toledo*, 390 P.3d 1248, 1254–55 (Haw. 2017); *FV-I, Inc. v. Kallevig*, 392 P.3d 1248, 1257–60 (Kan. 2017); *Deutsche Bank Nat'l Trust Co. v. Mitchell*, 27 A.3d 1229, 1234–36 (N.J. App. Div. 2011); *Deutsche Bank Nat'l Trust Co. v. Johnston*, 369 P.3d 1046, 1052–56 (N.M. 2016); *Aurora Loan Services, LLC v. Taylor*, 34 N.E.3d 363, 365–66 (N.Y. 2015); *Federal Home Loan Mortgage Corp. v. Schwartzwald*, 2012-Ohio-5017, ¶¶ 27–28, 979 N.E.2d 1214; *Deutsche Bank Nat'l Trust Co. v. Richardson*, 2012 OK 15, ¶¶ 9–11, 273 P.3d 50. Each of these cases have relied upon the doctrine of "standing" as the source of the requirement.

In this case, plaintiff established that defendant borrowed money, that he breached his repayment obligation, that the lender provided notice of its intent to accelerate the loan if defendant did not meet certain conditions, that defendant did not meet those conditions, that defendant's repayment obligation was secured by a mortgage, that the mortgage and the subsequent assignment were both recorded in the land records, and that plaintiff was entitled to enforce the note as of the time of the merits hearing. Plaintiff proved the last element by bringing the original note to court, where the court was able to inspect the document. It was endorsed in blank and contained defendant's wet-ink signature. No doubt whatsoever exists that plaintiff is the holder of the note and entitled to its enforcement within the meaning of the Uniform Commercial Code.

In other words, in all respects expect one, plaintiff proved that it was entitled to judgment on the merits. The missing element was whether plaintiff was entitled to enforce the note "at the time the complaint was filed." *Kimball*, 2011 VT 81, ¶ 14. A series of prior decisions and entry orders in this case had deferred this inquiry to merits, and so, under the rules of the standing doctrine, plaintiff needed to establish this element through "evidence adduced at trial." *Lujan*, 504 U.S. at 561 (quotation omitted). Plaintiff made an effort at the merits hearing to make this showing, through the introduction of bailee letters identifying the location of the note at various times, but the chain of custody did not reach back as far as October 2009. Plaintiff also attempted to introduce other records, but they were not admitted under the business-records exception, and even that evidence did not appear to make it all the way back to the time of the filing of the complaint. After the trial concluded, the court invited the parties to submit proposed findings of fact, but plaintiff did not submit any proposed findings relating to the time when it acquired the note from the lender with the endorsement in blank.

As made clear in this opinion, this court does not believe that such proof should be required. The evidence established that defendant has not repaid his loan according to the terms of the note, and that plaintiff is entitled to enforcement. There is no risk in this case that defendant will be subject to multiple actions from multiple plaintiffs. Furthermore, plaintiff represented as early as 2010 that it was in possession of the note endorsed in blank. A motion filed pursuant to the "real party in interest" rule at any time since then would have resulted in a determination that plaintiff was, indeed, the real party in interest entitled to proceed with the matter. Any perceived defects in the complaint could have been cured by an amended complaint. *Scahill v. District of Columbia*, 909 F.3d 1177, 1183 (D.C. Cir. 2018). No purposes relevant to foreclosure law are served by insisting under these circumstances that plaintiff cannot obtain a judgment.

Moreover, while the consequences of judgment in defendant's favor for reasons of "standing" appear to be "ephemeral" in the sense that plaintiff will not be precluded from pursuing a new foreclosure action based upon a new default, *Kimball*, 2011 VT 81, ¶ 23, the consequences are also real and deeply unfair in the sense that plaintiff will be prevented from recovering more than $450,000 in interest that has accrued since the time of defendant's default, amongst other amounts. *Malenfant*, 2016 VT 93, ¶¶ 33–38. The outcome represents a windfall to defendant, and does not appear to serve "the equities of the situation," *Retrovest Associates, Inc. v. Bryant*, 153 Vt. 493, 500 (1990) (quoting *Merchants Bank v. Lambert*, 151 Vt. 204, 206 (1989)), nor otherwise advance the interests in a "just, speedy, and inexpensive determination of every action." Vt. R. Civ. P. 1. Nor does it serve any purpose related to the separation of powers, which is the purported justification for the rule. *Parker*, 169 Vt. at 76–77. It indeed appears to be the type of incorrect conclusion that other courts have suggested might follow from the application of the "standing" doctrine to private claims, including foreclosure claims.

A reader might question whether *Kimball* intended to require this outcome. Some of its reasoning could be interpreted as suggesting a narrower basis for its holding, or an alternative explanation for its conclusion. It is tempting to distinguish *Kimball* along these lines. *Kimball*, however, states repeatedly that the doctrine of "standing" requires foreclosure plaintiffs to demonstrate a right to enforcement of the note as of "the time the complaint was filed." 2011 VT 81, ¶¶ 13–16. *Rouleau* later repeated this statement. 2012 VT 19, ¶ 13. A number of Vermont Superior Court cases have characterized the holding of *Kimball* in these terms, e.g., *U.S. Bank Nat'l Ass'n v. Fresne*, No. 398-11-15 Bncv, 2015 WL 10551404 at *2–3 (Vt. Super. Ct. Dec. 21, 2015) (Valente, J.); *Rushing Creek LLC v. CMGC Building Corp.*, 2014 WL 8515133 at *6 (Vt. Super. Ct. Dec. 16, 2014) (Wesley, J.); *Aurora Loan Services*, 2013 WL 3288062 at *2; *OneWest Bank, F.S.B. v. Reynolds*, No. 51-2-11 Wrcv, 2011 WL 8472933 at *1 (Vt. Super. Ct. Aug. 5, 2011) (Hayes, J.). A number of decisions of the U.S. Bankruptcy Court for the District of Vermont have done the same, e.g., *In re Monty*, 2015 WL 1805922 at *2 (Bankr. D. Vt. Apr. 16, 2015); *In re Gould*, 2013 WL 5786955 at *3 (Bankr. D. Vt. Oct. 28, 2013); *In re Nishiyachi*, 2014 WL 3928493 at *3 (Bankr. D. Vt. Aug. 12, 2014); *Densmore*, 445 B.R. at 312; *Parker*, 445 B.R. at 305–06. And other state courts have likewise cited *Kimball* in support of their own holdings that a foreclosure plaintiff must show both that they are presently entitled to enforce the note and that they were so entitled at the time the complaint was filed, as a matter of "standing," e.g., *McLean*, 79 So.3d at 174; *Reyes-Toledo*, 390 P.3d at 1256; *Kallevig*, 392 P.3d at 1257; *Johnston*, 369 P.3d at 1054; *Schwartzwald*, 2012-Ohio-5017, ¶ 27. A substantial body of precedent therefore supports reading *Kimball* as holding that foreclosure plaintiffs must demonstrate their "standing" to enforce the note as of the time the complaint was filed.

Although this court believes, for all of the reasons stated in this opinion, that the use of the "standing" doctrine leads to confusion and incorrect conclusions in foreclosure cases, this court is obliged to follow the decisions of the Vermont Supreme Court even when (perhaps especially when) this court believes that those decisions are misguided or "rest on reasons" that have been "rejected in some other line of decisions." See *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989) (explaining that "[i]f a precedent of [a superior court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [inferior court] should follow the case which directly controls, leaving to [the superior court] the prerogative of overruling its own decisions").

For these reasons, the court interprets *Kimball* as meaning that a foreclosure plaintiff must demonstrate, as "an indispensable part of the plaintiff's case," that it was entitled to enforce the note "at the time the complaint was filed." *Kimball*, 2011 VT 81, ¶ 14; *Lujan*, 504 U.S. at 561. Because plaintiff has not made that demonstration here, judgment is entered for defendant.

\* \* \*

A few additional observations and findings are appropriate to facilitate further appellate review, in the event that plaintiff appeals this determination. First, as indicated above, other than the element of standing, the court finds by a preponderance of the evidence that plaintiff is entitled to a judgment of foreclosure. Defendant breached a condition in the note, the power of acceleration was appropriately exercised, and plaintiff demonstrated that it is in possession of the original note, endorsed in blank. Likewise, the note was secured by a mortgage, and the mortgage and the assignment were recorded in

the land records. To the extent needed for a merits determination, the figures in plaintiff's exhibit #7 were credible and established by the evidence presented. If an appellate determination were to result in reversal of this decision with direction to enter judgment for plaintiff, the next step on remand would be to invite a motion for an accounting and to proceed from there to formulate the judgment order and decree of foreclosure.

Second, although defendant has argued that the 2010 decision by Judge Cohen and the 2020 decision by Judge Gerety established heightened standards of proof for this case, both of those decisions were explanations as to why the moving party did not meet their burden of proof on a motion for summary judgment, e.g., *Pierce v. Riggs*, 149 Vt. 136, 138 (1987). As such, neither decision established any "law of the case" nor otherwise imposed additional rules that must be followed. *Burgess v. Lamoille Housing Partnership*, 2016 VT 31, ¶ 19, 201 Vt. 450; *Madowitz v. Woods at Killington Owners' Ass'n, Inc.*, 2014 VT 21, ¶¶ 10–11 & nn. 6–7, 196 Vt. 47. The court's determinations in this opinion are based upon existing law, and not upon unique standards applicable only to this particular case.

Third, defendant has raised many arguments pertaining to the role of MERS as a "nominee" for the lender. Although the role of MERS was not well understood following the foreclosure crisis, courts have since accepted that foreclosure plaintiffs may receive assignments of the mortgage from MERS, e.g., *Countrywide Home Loans, Inc. v. Young*, No. 557-10-08 Wmcv, 2015 WL 13548133 at *6 (Vt. Super. Ct. July 22, 2015) (Wesley, J.); *Reynolds*, 2011 WL 8472933 at *1. Longstanding law establishes that, while a foreclosure plaintiff should have an assignment of the mortgage, "the debt is the principal thing, and the mortgage is an incident of it which accompanies and follows the debt wherever that may be assigned." *Island Pond Nat'l Bank v. Lacroix*, 104 Vt. 282, 294 (1932); *Nash v. Kelley*, 50 Vt. 425, 429–30 (1878); *Langdon*, 9 Vt. at 300. In this case, other than the aforementioned issue of "standing," the evidence established both that plaintiff is entitled to enforce the note, and that plaintiff is entitled to foreclose upon the mortgage.

Fourth, at trial, defendant made certain objections that the court shepherded into the form of a motion for exclusion made pursuant to Vermont Civil Procedure Rule 37(c)(1). A conditional ruling was made admitting the documents at trial, subject to further review. The basic premise was that the challenged exhibits contained some information that was subject to a discovery order issued by Judge Cohen in 2010, and that plaintiff had failed to meet an ongoing duty to supplement the 2010 discovery responses with respect to responsive information generated since that time, but that the court was not sure during the trial whether the challenged documents would be material to the outcome of the case. After review of the challenged exhibits and the preparation of this decision, it has become evident that introduction of the information contained within the challenged exhibits was "harmless" within the meaning of the rule, because none of the information was material either to the "standing" ruling that forms the basis of this decision, nor to a judgment in plaintiff's favor in the event of reversal on appeal. Information regarding the principal amount and the terms of the debt were provided in the 2010 disclosure, and an accounting will provide an opportunity for defendant to be heard with respect to any accruing amounts to be included in the judgment order in the event of reversal.

Finally, as the court has repeatedly ruled, defendant's purported counterclaims were previously dismissed, and no counterclaims were within the scope of the remand from the Vermont Supreme Court in *Bank of New York Mellon v. Quinn*, No. 22-AP-049, 2022 WL 16848166 (Vt. Nov. 2022) (unpub. mem.). For that reason, the court declines to consider defendant's arguments related to amounts that should be awarded to him.

* * *

For the foregoing reasons, judgment is entered for defendant.

Electronically signed on Wednesday, July 31, 2024 pursuant to V.R.E.F. 9(d).

H. Dickson Corbett
Superior Court Judge

Vermont Superior Court
Filed 08/05/24
Windsor Unit